UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

State Farm Mutual Ins. Co.,

      Plaintiff,

                                                 Case No. 16-13040

v.

                                                 Hon. Sean F. Cox

Elite Health Centers, Inc., *et. al.*

      Defendants.

_____/

## **OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") brings this action against 18 defendants. Specifically, State Farm claims that Defendants have submitted fraudulent claims to the insurer under Michigan's No-Fault Automobile Act. State Farm's complaint alleges several claims of common law fraud, civil conspiracy and unjust enrichment, and a count for declaratory judgment.

Currently before the Court is Defendants Elite Health Centers, Inc., Elite Chiropractic, P.C., Elite Rehabilitation, Inc., Midwest Medical Associates, Inc., Pure Rehabilitation, Inc., Derek L. Bittner D.C., Mark A. Radom, Derek Lawrence Bittner, D.C., Ryan Matthew Lukowski, D.C., Michael P. Draplin, D.C., Mark J. Juska, M.D., and Superior Diagnostic, Inc.'s Motion to Dismiss. Defendants Dearborn Center for Physical Therapy, LLC, Michigan Center for Physical Therapy, Inc., Jayson Rosett, Noah H. Upfall and Michael J. Paley, M.D. have filed concurrences to the Motion to Dismiss. Defendant Chintan Desai, M.D. has not concurred in the motion and has instead filed a separate motion to dismiss, which the Court will address at a later date in a separate Opinion & Order.

1

Defendants' advance the following arguments in their motion: (1) the complaint fails to plead any facts to support individual liability; (2) State Farm lacks standing to allege claims arising from the incorporation of the entity defendants as non-profit corporations; (3) the fraud claims fail because they do not meet the heightened pleading requirements of Rule 9(b); (4) the civil conspiracy claims fail because the complaint fails to plead an underlying tort and because the complaint fails to plead conspiracy with requisite specificity; (5) the unjust enrichment claims fail because the complaint fails to identify which Defendants received which benefits and because an express contract exists covering the subject matter at issue; and (6) the Court should abstain from exercising jurisdiction over the declaratory judgment action.

Defendants' motion has been fully briefed.  The Court finds that oral argument would not significantly aid in the decisional process and therefore orders that the instant motion will be decided upon the briefs.  *See* E.D. Mich. LR 7.1(f).  For the reasons that follow, the Court shall **DENY** Defendants' motion.

## BACKGROUND

### A.    Factual Background

Plaintiff State Farm is a corporation that engages in the business of insurance in Michigan.  State Farm brings this action against 18 defendants, all of which are alleged to have played a role in a scheme to defraud the insurer: (1) Elite Health Centers, Inc.; (2) Elite Chiropractic, P.C.; (3) Elite Rehabilitation, Inc.; (4) Midwest Medical Associates, Inc.; (5) Pure Rehabilitation, Inc.; (6) Derek L. Bittner D.C., P.C.; (7) Mark A. Radom; (8) Derek Lawrence Bittner D.C.; (9) Ryan Matthew Lukowski D.C.; (10) Michael P. Draplin D.C.; (11) Noel H. Upfall D.O.; (12) Mark J. Juska; (13) Superior Diagnostic, Inc.; (14) Chintan Desai, M.D.; (15)

2

Michael J. Paley; (16) Dearborn Center for Physical Therapy, LLC; (17) Michigan Center for Physical Therapy, Inc.; and (18) Jason Rosett.

### 1.    The Defendants

At the center of the alleged scheme are Defendants Derek Lawrence Bittner, D.C., a chiropractor, and Mark A. Radom, a layperson.

State Farm alleges that Bittner and Radom created, own and control several entities that: (1) submit bills and supporting documentation to State Farm Mutual for chiropractic, physical therapy and medical services purportedly rendered to patients that were not actually performed or were not medically necessary; (2) that prescribe and refer patients to two locations owned by Defendant Jayson Rosett for physical therapy services that are either not performed or not medically necessary; and (3) that refer State Farm Mutual insureds to receive medically unnecessary MRIs from Horizon Imaging, LLC and from Defendant Superior Diagnostics, Inc. (Compl. at ¶ 1).

### a.    The Elite Entities

Defendant Derek L. Bittner D.C., P.C. ("Bittner P.C.") is a Michigan professional corporation, formed in 2000.  (Compl. at ¶ 203).  Bittner is the resident agent and president. (*Id*.).  Defendant Elite Chiropractic P.C. ("Elite Chiro") is a Michigan professional corporation formed in 2011.  Derek Bittner is the resident agent and sole officer.

Bittner P.C. and Elite Chiro submitted bills to State Farm Mutual for chiropractic services purportedly rendered at four locations: Sterling Heights, Detroit, Westland, and Riverview.  (Compl. at ¶ 205).

Defendant Elite Rehabilitation, Inc. ("Elite Rehab") is a Michigan domestic non-profit

formed by Bittner in 2011.  (Compl. at ¶ 206).  Defendant Pure Rehabilitation, Inc., ("Pure Rehab") is a Michigan domestic non-profit corporation formed in March 2014 to replace Elite Rehab.  (Compl. at ¶ 207).

Defendant Elite Health Centers, Inc., ("Elite Health") is a Michigan domestic non-profit formed in 2011 by Bittner.  (Compl. at ¶ 208).  From 2013 through June 2014, Elite Health submitted documentation for: (1) physical therapy under the assumed names Rehabilitation of Sterling Heights and Rehabilitation of Detroit; (2) for medical exams under the name Pain Specialists of Michigan; for surgery consultations under the name Prime Neurosurgery Group; and (3) for neurological consultations under the name Pioneer Neurology Group.  Defendant Midwest Medical Associates, Inc. ("Midwest Medical") is a Michigan domestic non-profit corporation formed in March 2014 to replace Elite Health.

### b.    Defendant Chiropractors

Defendant Ryan Matthew Lukowski, D.C. ("Lukowski") is a licensed chiropractor. (Compl. at ¶ 211).  From Approximately 2012 through approximately February 2013, Lukowski worked for the Elite Entities full-time at the Detroit location and once a week at the Sterling Heights location.

Defendant Michael Patrick Draplin, D.C., ("Draplin") is a licensed chiropractor.  (Compl. at ¶ 212).  Draplin worked for the Elite Entities at the Detroit location, where he became the primary Elite chiropractor after Lukowski left.

During this time, Lukowski and Draplin are alleged to have falsely purported to provide legitimate chiropractic  evaluations and treatment for a significant number of patients who treated at Elite pursuant to the Predetermined Protocol, referred patients to Elite doctors for

medical exams pursuant to which medically unnecessary physical therapy could be prescribed and ordered medically unnecessary MRIs.

### c.      The Elite Doctors

Defendant Noah Upfall, D.O. ("Upfall") is a licensed doctor of osteopathy.  (Compl. at ¶ 213).  Upfall worked for Elite Health and its successor, Midwest Medical, from 2011 through February 2014.

Defendant Mark J. Juska, M.D. ("Juska") is a licensed medical doctor.  (Compl. at ¶ 214).  Juska worked at Elite Health and its successor, Midwest Medical, from late 2013 through early 2015.  Juska testified that: he was an employee of Michigan Sports and Spine Center, P.C. ("Michigan Sports"); his boss was Jeff S. Pierce, D.O., who is the president of Michigan Sports; Pierce arranged for him to work at Elite Health; there was a relationship or agreement between Elite Health and Michigan Sports; and that he was paid by Michigan sports, not Elite Health.

Upfall and Juska are alleged to have falsely purported to examine, diagnose and prescribe medically unnecessary physical therapy for patients who treated at the Elite Entities and made referrals to other Elite doctors and ordered medically unnecessary MRIs.

### d.      MRI Defendants

Defendant Superior Diagnostic, Inc. ("Superior") is a Michigan non-profit corporation formed in 2014.  (Compl. at ¶ 215).  Superior is owned by Bittner and Radom, either directly or indirectly through Midwest Medical, which in turn is owned by Bittner and Radom.

Bittner and Radom are alleged to have directed chiropractors, doctors and staff at the Elite Entities to steer patients to Superior for medically unnecessary MRIs to serve Radom's and Bittner's financial interests.

5

Defendant Chintan Desai, M.D. ("Desai") is a licensed doctor and works as an independent contractor with a teleradiology company where he remotely reviews MRIs for Horizon, a mobile MRI truck located in a parking lot (which Radom allegedly has a financial interest).  (Compl. ¶¶ 22, 216).

Defendant Michael J. Paley, M.D. ("Paley") is a licensed doctor and remotely reviews MRIs from Horizon and Superior.  (Compl. at ¶ 217).

Desai and Paley have allegedly provided fraudulent MRI reports for patients who treated at Elite, which report abnormalities that do not exist and which over-read and exaggerate abnormalities that may exist.

### e.    The Rosett Defendants

At all times relevant to this action, Defendant Jayson Rosett ("Rosett") owned Defendant Dearborn Center for Physical Therapy, LLC ("Dearborn Center") and Defendant Michigan Center for Physical Therapy, Inc. ("Michigan Center") (collectively, "the Rosett PT Entities"). (Compl. at ¶ 219).

Rosett is alleged to have directed the activities of those who were employed by and associated with the Rosett PT Entities.  From 2011 to present, the Rosett PT Entities allegedly submitted medical records and supporting documents, which are fraudulent in that they represented that physical therapy services were actually rendered and were medically necessary when, in fact, they were not.

### 2.    Factual Allegations Regarding Fraudulent Scheme

State Farm's 116-page complaint details Defendants' alleged schemed to defraud the insurer.  Below is a broad overview of the alleged facts.

6

Defendants' scheme is alleged to have began in or about 2011 and has continued uninterrupted since. State Farm alleges that Defendants Bittner and Radom are at the center of the scheme.  To facilitate this scheme and to circumvent Michigan laws–which limit the circumstances under which a chiropractor and a layperson may own and control entities providing professional services–Bittner and Radom are alleged to have fraudulently incorporated several of the Defendant entities as non-profit corporations and have allegedly attempted to conceal their respective interests and roles in these entities.  (Compl. at ¶ 2).

State Farm further alleges that each of the individual physicians and chiropractors who are named as defendants in this case are essential to the scheme because they falsely purported to examine, diagnose and either order or provide medically necessary services tailored to the unique needs of each patient.  (Compl. at ¶ 3).  The individual defendants are alleged to have examined and diagnosed patients based upon a "predetermined protocol" of chiropractic, physical therapy, medical and MRI services that are either not performed or are not medically necessary.

State Farm alleges that the bills and related documentation submitted by Defendants were fraudulent because they falsely represented that: (1) patients were legitimately examined; (2) patients were legitimately diagnosed with sprains and strains of the cervical, thoracic, and/or lumbar regions of the spine; (3) each patient's injury was a result of an auto accident; and (4) patients were prescribed and received services that were medically necessary when in fact the services were provided pursuant to a fraudulent "predetermined protocol."   (Compl. at ¶ 4).

Pursuant to the "predetermined protocol," Defendants allegedly: (1) failed to perform legitimate chiropractic examinations to determine the true nature of patients' injuries; (2)

7

reported nearly identical chiropractic examination findings for patients; (3) implemented the same chiropractic treatment plans regardless of the unique needs of each patient; (4) referred patients for unnecessary MRIs to Horizon, in which Radom has a financial interest and Superior, in which both Radom and Bittner have financial interests; (5) referred patients to doctors, including Upfall and Juska, who purported to examine patients at Elite Health/Midwest Medical, but who did not perform legitimate medical examinations and who prescribed medically unnecessary services at Elite Rehab/Pure Rehab or at the Rosett PT Entities; (6) provided medically unnecessary physical therapy concurrently with chiropractic services; (7) purported to treat patients until patients stopped treatment on their own or until State Farm communicated that it would no longer pay for further treatment; and (8) submitted fraudulent bills and supporting documentation in order to obtain no-fault benefits.

State Farm further alleges that the "predetermined protocol" has resulted in: (1) patients not being legitimately examined, diagnosed and treated for conditions they may have had; (2) patients being subjected to treatment for conditions they may not have had; and (3) the use of fraudulent bills and related documents to inflate the value of uninsured motorist claims against State Farm and bodily injury claims against at-fault drivers.

As a result of Defendants' material representations, State Farm alleges that it did not discover, and should not have reasonably discovered, that its damages were attributable to fraud until recently.

**B.    Procedural Background**

State Farm initiated this action on August 22, 2016.  (Doc. # 1, Compl.).  State Farm's complaint asserts the following claims:

| | |
|---|---|
| Count I | Common Law Fraud, against Bittner, Radom, Lukowski, Draplin, Juska, Upfall, Superior, Desai, Paley, Elite Chiro, Bittner P.C., Midwest Medical, Elite Health, Pure Rehab and Elite Rehab; |
| Count II | Civil Conspiracy, against Bittner, Radom, Lukowski, Draplin, Upfall, Juska, Superior, Desai, Paley, Elite Chiro, Bittner P.C., Midwest Medical, Elite Health, Pure Rehab and Elite Rehab; |
| Count III | Unjust Enrichment, against Bittner, Radom, Lukowski, Draplin, Upfall, Juska, Superior, Desai, Paley, Elite Chiro, Bittner P.C., Midwest Medical, Elite Health, Pure Rehab and Elite Rehab; |
| Count IV | Common Law Fraud, against Bittner, Radom, Draplin, Upfall, Juska, Superior, Desai, Paley, Rosett, Elite Chiro, Bittner P.C., Midwest Medical, Elite Health and Rosett PT Entities; |
| Count V | Civil Conspiracy, against Bittner, Radom, Draplin, Upfall, Juska, Superior, Desai, Paley, Rosett, Elite Chiro, Bittner P.C., Midwest Medical, Elite Health and Rosett PT Entities; |
| Count VI | Unjust Enrichment, against Bittner, Radom, Draplin, Upfall, Juska, Superior, Desai, Paley, Rosett, Elite Chiro, Bittner P.C., Midwest Medical, Elite Health and Rosett PT Entities; |
| Count VII | Common Law Fraud, against Bittner, Radom and Superior; |
| Count VIII | Civil Conspiracy, against Bittner, Radom and Superior; |
| Count IX | Unjust Enrichment, against Bittner, Radom and Superior; and |
| Count X | Declaratory Judgment, against Elite Entities, Rosett PT Entities and Superior |

(Compl. at ¶¶ 222-271). State Farm seeks monetary and declaratory relief.

On October 24, 2016, Defendants Bittner, Bittner P.C., Draplin, Elite Chiro, Elite Health, Elite Rehab, Juska, Lukowski, Midwest Medical, Pure Rehab, Radom and Superior filed the instant Motion to Dismiss. (Doc. # 21, Def.s' Br.). Defendants Dearborn Center for Physical Therapy LLC, Michigan Center for Physical Therapy, Inc., Jayson Rosett, Michael J. Paley and Noel H. Upfall have concurred in the filing of the motion. (Doc. # 26, 27, 42). Defendant Desai

9

has not concurred in the motion and has instead filed a separate motion to dismiss. (Doc. # 58).

In their motion to dismiss, Defendants make the following arguments: (1) the complaint fails to plead any facts to support individual liability; (2) State Farm Mutual lacks standing to allege claims arising from the incorporation of the entity defendants as non-profit corporations; (3) the fraud claims fail because they do not meet the heightened pleading requirements of Rule 9(b); (4) the civil conspiracy claims fail because the complaint fails to plead an underlying tort and because the complaint fails to plead the conspiracy with requisite specificity; (5) the unjust enrichment claims fail because the complaint fails to identify which Defendants received which benefits and because an express contract exists covering the subject matter at issue; and (6) the Court should abstain from exercising jurisdiction over the declaratory judgment action.

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint

and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

The Sixth Circuit has instructed that at this "early stage," courts should "take into account economic or logistical circumstances that prevent [Plaintiffs] from obtaining evidence supporting [their] claim[s] and adjust the plausibility threshold appropriately to account for these difficulties." *El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 735 (6th Cir. 2015).

## ANALYSIS

### A.   Challenges Against Personal Liability

Initially, Defendants argue that State Farm's "conclusory allegations are insufficient to pierce the corporate veil and hold individual officers, members, or employees of the Defendant entities personally liable" for the acts alleged in the complaint.  (Def.'s Br. at 11).  This argument is unavailing.

As State Farm correctly points out, "'[i]t is beyond question that a corporate employee or official is personally liable for all tortious ... acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation.'" (Pl.'s Resp. at 14, n. 6) (quoting *Attorney Gen. v. Ankerson*, 148 F. App'x 260, 263 (6th Cir. 2005)).

### B.   Challenges As To Standing

Defendants also argue that State Farm lacks standing to allege claims arising from the incorporation of the entity defendants as non-profit corporations.  (Def.'s Br. at 16). Specifically, Defendants argue that the "Michigan Non-Profit Act does not provide for a private

cause of action under these circumstances." (*Id*. at 17).  Defendants' argument misses the mark.

Despite Defendants' arguments to the contrary, there is no standing issue here.  State Farm does not bring a claim under the Michigan Non-Profit Act.  Nor does State Farm dispute that the defendant entities were properly incorporated as non-profits.  Instead, State Farm alleges that, while the defendant entities are incorporated as non-profits, their real purpose is to enable Defendants Bittner and Radom to engage in fraud.  Specifically, State Farm alleges that the non-profit entities named as defendants in this case behave contrary to their non-profit corporate status, and that this behavior makes these entities essential players in the scheme to defraud State Farm out of money for the benefit of their owners.

**C.     Challenges to Fraud Claim**

State Farm alleges common law fraud claims against Defendants in Counts I, IV, and VIII of its complaint.  In their motion, Defendants advance the following arguments against Plaintiff's fraud claims: (1) the complaint does not meet the heightened pleading requirements of Rule 9(b) and the allegations against the individual defendants are conclusory and amount to group pleading; (2) the complaint fails to identify "which 'services' were fraudulent" or "where" and "when" the fraudulent statements were made; and (4) the complaint does not allege that Defendant Radom made any fraudulent statements.  Each of these arguments is without merit for the reasons below.

Federal Rule of Civil Procedure 9(b) imposes a particularity requirement on fraud claims.  For State Farm to meet the requirement, its complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana*

12

*Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (internal quotations and citations omitted).  To this end, State Farm must, "at a minimum, ... allege the time, place and contents of the misrepresentation upon which they relied."  *Id.*

"When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct."  *Llewellyn Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 780-81 (E.D. Mich. 2014) (quotations and citations omitted). Accordingly, "[t]he threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff[']s claim of fraud."  *Id.*

Here, State Farm has provided a 116-page description of how the Defendants' alleged scheme to defraud the insurer worked.  Among the exhibits attached to the complaint are charts detailing the fraudulent services purportedly rendered to each patient, the dates of service and the amounts billed.  (*See* Ex. 1, 3-5, 15, 17, 19-23 to Compl.).

A review of the allegations and exhibits makes it clear that Defendants have received sufficient notice of the fraudulent misrepresentations they are alleged to have made: (1) Bittner and Radom fraudulently created non-profit corporations and hired the individual defendants in order to carry out and profit from the predetermined protocol of treatment; (2) Bittner, Lukowski and Draplin falsely purported to provide legitimate chiropractic evaluations and treatment for a significant number of patients who treated at the Elite Entities and unnecessarily referred patients to Elite Health/Midwest Medical for medical exams; (3) Upfall and Juska falsely purported to examine, diagnose and prescribe unnecessary physical therapy for patients who

treated at the Elite Entities, made unnecessary referrals to other Elite doctors and to the Rosett

PT Entities, and ordered unnecessary MRIs through Superior or Horizon; (4) Rosett directed the

activities of the Rosett PT Entities, which submitted fraudulent medical records and supporting

documentation; and (5) Paley and Desai provided fraudulent MRI reports for patients who

treated at the Elite Entities.

Numerous courts have similarly concluded that such documentation and explanation of

the fraudulent scheme satisfies Rule 9(b). *See e.g. State Farm Mut. Auto Ins. Co. v. Universal*

*Health Grp., Inc.*, 2014 WL 5427170, at *4 (E.D. Mich. Oct. 24, 2014); *State Farm Mut. Auto*

*Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772 (E.D. Mich. 2015); *State Farm*

*Mut. Auto Ins. Co. v. Physiomatrix, Inc*., 2014 WL 555199 (E.D. Mich. Feb. 12, 2014).  As such,

State Farm's complaint provides a level of detail that is sufficient at the pleading stage to satisfy

the particularity requirement of Rule 9(b).[1]

## D.      Challenges to Civil Conspiracy Claim

State Farm asserts civil conspiracy claims against Defendants in Counts II, IV and  VIII.

Defendants argue that State Farm's civil conspiracy claims fail because: (1) the complaint fails

---

[1] Defendants also mention State Farm's failure to offer evidence to support the allegations contained within its complaint.  Defendants miss the mark.  At this stage in the proceedings, State Farm is not required to produce evidence.  Instead, the Court is required to accept all factual allegations in the complaint as true.

Defendants also imply that State Farm's fraud claim fails because State Farm's reliance on the alleged misrepresentations was not reasonable.  This argument is without merit.  State Farm has alleged that it justifiably relied on Defendants' misrepresentations. (Compl. at ¶¶ 194-97).  At this juncture, the Court must accept this allegation as true.

to allege an underlying tort; and (2) the complaint fails to allege a conspiracy.[2]   Defendants'
arguments are without merit.

"A civil conspiracy is a combination of two or more persons, by some concerted action,
to accomplish a criminal or unlawful purpose, or to accomplish a purpose not lawful by criminal
or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 358
(1992). A claim for civil conspiracy requires proof of an agreement to achieve the objective of
the conspiracy. *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1341 (E.D. Mich.
2011). A plaintiff asserting civil conspiracy must also demonstrate some underlying tortious
conduct because civil conspiracy is not an independently actionable tort. *Advocacy Org. for
Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 383 (2003). "Civil
conspiracy claims must be pled with some specificity: vague and conclusory allegations that are
unsupported by material facts" are insufficient to state a claim. *Gutierrez v. Lynch*, 826 F.2d
1534, 1538 (6 th Cir. 1987).

Because State Farm has sufficiently alleged fraud as the underlying tort for its conspiracy

---

[2] To the extent that Defendants rely on the intracorporate-conspiracy doctrine for the
proposition that corporations generally cannot conspire with their board of directors, officers or
employees, this argument is not developed and the doctrine is not applicable here. First, this
doctrine does not apply "where the directors have an independent personal stake in a particular
action..." *Blair v. Checker Cab Co.*, 219 Mich. App. 667, 674 (1996); *Bear Hollow, LLC v.
Moberk, LLC*, 2006 WL 1642126, at *13 (W.D.N.C. June 5, 2006) ("where the plaintiff alleges
that the corporate employees were controlled by personal motives or where their actions
exceeded the bounds of their authority, the intracorporate conspiracy doctrine is inapplicable").
Here, State Farm persuasively points out that the individual defendants had a personal stake in
the alleged conspiracy, which can be demonstrated by the allegations of self-referrals.
Moreover, the doctrine is not applicable where, as here, the defendants are not all agents of the
same corporation. *Bear Hollow*, 2006 WL 1642126, at *13 ("Since Defendants and Cler are not
all agents of the same corporation, the intracorporate conspiracy doctrine is an inapplicable
defense").

claim, the Court need only address whether the conspiracy claim has been alleged with requisite specificity. Here, State Farm alleges that each defendant has acted in concert and knowingly and intentionally agreed and conspired to accomplish, through a common plan and design, an unlawful and common purpose, *i.e.*, to defraud the insurer through the submission of thousands of fraudulent bills and supporting documentation.

At this juncture, the Court finds that the claim that Defendants knowingly conspired to defraud State Farm is supported by allegations tending to show an agreement between Defendants. State Farm's 116-page complaint explains in detail each defendant's role in the overall conspiracy. In so doing, the complaint identifies the "predetermined protocol" that governed Defendants' actions (*i.e.*, Defendants acted in furtherance of the conspiracy pursuant to a common plan) and it identifies the actual fraudulent bills submitted or caused to be submitted by Defendants.

## E.     Challenges to Unjust Enrichment Claim

State Farm alleges unjust enrichment claims against Defendants in Counts III, VI and IX. Defendants argue that State Farm's unjust enrichment claims fail because: (1) the complaint fails to allege which benefits the individual defendants received as the result of fraud or conspiracy; and (2) because express contracts covering the same subject matter exist. (Def.s' Br. at 24). Defendants' arguments are without merit.

In order to sustain an unjust enrichment claim, a plaintiff must establish: "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195 (2006).

Defendants' first argument–that State Farm fails to allege which benefits the individual defendants received–is not persuasive in light of the allegations set forth in the complaint. The complaint alleges that State Farm conferred a benefit upon the individual defendants by paying their claims. The complaint further alleges that it would be inequitable to allow the individual defendants to retain the benefit of payments made for services that were not rendered or were not medically necessary. In so alleging, the complaint identifies which fraudulent services were billed, the dates of the services and the amounts billed. These allegations permit the Court to infer that the individual defendants benefitted at the expense of State Farm.

Defendants' second argument–that the unjust enrichment claims fail because express contracts exist between State Farm and its insureds–is not persuasive and has been consistently rejected by other courts within this District. "[U]nless it is undisputed that there is an express contract between the same parties covering the same subject matter, State Farm is entitled to plead unjust enrichment as an alternative claim of relief." *State Farm Mut. Auto Ins. Co. v. Physiomatrix, Inc.*, 2013 WL 509284, at *5 (E.D. Mich. Jan. 12, 2013). Here, State Farm disputes the existence of an express contract between it and Defendants. As such, the Court shall permit the unjust enrichment claims to go forward.

**F.**     **Abstention Arguments**

Defendants' final arguments pertain to abstention. Specifically, Defendants argue that the Court should abstain from ruling on State Farm's claim for declaratory relief pursuant to: (1) the *Burford* abstention doctrine; (2) the *Colorado River* abstention doctrine; (3) the *Wilton* abstention doctrine; and (4) the *Scottsdale* factors. Defendants' arguments are without merit because each of these doctrines are inapplicable.

17

1.     *Burford* **Doctrine**

First, Defendants assert that the Court should abstain from hearing this action under

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  "*Burford* abstention is used to avoid conflict with

a state's administration of its own affairs."  *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 716

(6th Cir. 2002).  Under this doctrine:

> Where timely and adequate state-court review is available, a federal court sitting
> in equity must decline to interfere with the proceedings or orders of state
> administrative agencies: (1) when there are difficult questions of state law bearing
> on policy problems of substantial public import whose importance transcends the
> result in the case then at bar; or (2) where the exercise of federal review of the
> question in a case and in similar cases would be disruptive of state efforts to
> establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989).

Defendants argue that "Michigan's No-Fault Act is a particularly unique state-law regime

which is unquestionably 'of substantial public import.'" (Def.s' Br. at 26).  Defendants further

argue that the exercise of jurisdiction would impede Michigan's ability "to control policy"

regarding "no-fault insurance."  (*Id.*).  Defendants arguments are conclusory and unsupported by

any relevant authority.

Initially, it is worth noting that Defendants have not identified a single ongoing

proceeding or order of state administrative agencies with which this case would interfere.

Moreover, despite Defendants' arguments to the contrary, "federal courts regularly decide issues

concerning Michigan's no-fault scheme without raising the conflict issues *Burford* abstention is

intended to address."  *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic

P.C.*, 2015 WL 4724829, at *17 (E.D. Mich. Aug. 10, 2015); *see also Universal Health*, 2014

WL 5427170, at *10 (refusing to abstain on the basis that Michigan's no-fault insurance system

18

is "unique").

As such, Defendants have failed to persuade the Court that abstention is warranted.

### 2.   *Colorado River* Doctrine

Defendants next argue that the Court should abstain from presiding over this action pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). The *Colorado River* doctrine permits a federal court to abstain from exercising jurisdiction over a matter "in deference to a parallel state-court proceeding if abstention will best promote the values of efficient dispute resolution and judicial economy." *Gentry v. Wayne Cnty.*, 2010 WL 4822749, at *2 (E.D. Mich. Nov. 22, 2010).

Abstention under the *Colorado River* doctrine is appropriate if two requirements are met. First, the Court must find that the concurrent state and federal actions are parallel. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339-40 (6th Cir. 1998). Second, the Court must determine whether abstention is appropriate by considering a number of factors. *Id.* at 340-41. Because Defendants are contesting jurisdiction, it is their burden to prove that abstention is warranted. *See Answers in Gensis of Ky.*, 556 F.3d 459, 467 (6th Cir. 2009).

Here, Defendants have not satisfied the doctrine's first requirement because they fail to specifically identify a single parallel case. In an attempt to satisfy the doctrine's threshold inquiry, Defendants argue that "there are ongoing and active cases in Michigan courts between State Farm and various Defendants, and/or State Farm insureds." (Def.s' Br. at 28). Defendants generally conclude that "[t]his suit and the concurrent state suits are (or will be) parallel proceedings" because "the state court cases will likely involve the same parties (either Defendants directly or through individual insureds) and the same issues." (*Id.*).

Defendants' generalized and conclusory assertions are insufficient to establish that these purported state court suits are parallel.  Importantly, suits are only parallel "if substantially the same parties litigate substantially the same issues," and "involve the same plaintiff against the same defendant."  *Total Renal Care, Inc. v. Childers Oil Co.*, 743 F. Supp. 2d 609, 613-14 (E.D. Ky. 2010).  Here, Defendants have not sufficiently identified any state action, let alone a parallel one.  *See Warren Chiropractic & Rehab Clinic*, 2015 WL 4724829, at *15 (refusing to abstain on the basis that there were similar ongoing cases in state court and concluding that "Defendants' generic reference to "scores" of other cases, without citation or explanation, is not enough to show that these purported matters are parallel for purposes of the *Colorado River* doctrine").  Because Defendants have not identified a parallel state court case, the Court need not engage in the remainder of the *Colorado River* analysis.  *See Universal Health*, 2014 WL 5427170, at *10.

### 3.    *Wilton* Abstention

Defendants also argue that the Court should abstain from hearing this action pursuant to the doctrine outlined in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).  Pursuant to that doctrine, a Court may dismiss or stay an action in which solely declaratory relief is sought.  *Id.* at 288-90.  Defendants' arguments in support of abstention are without merit.  To put it simply, *Wilton* abstention is not appropriate where, as here, an action seeks monetary damages (through common law fraud, unjust enrichment and civil conspiracy claims) in addition to declaratory relief.  *See State Farm Mut. Ins. Co. v. Pointe Physical Therapy, LLC*, 68 F. Supp. 3d 744, 758 (E.D. Mich. 2014).

### 4.    *Scottsdale* Factors

Defendants' final argument is that abstention is appropriate pursuant to the five factors outlined in *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).  In *Scottsdale*, the Sixth Circuit outlined a number of factors to assist district courts in determining whether to exercise jurisdiction under the Declaratory Judgment Act: (1) whether the declaratory action will settle the controversy; (2) whether the declaratory action will serve a useful purpose by clarifying the legal relations at issue; (3) whether the declaratory action is merely intended to advance "procedural fencing" or "a race for res judicata;" (4) whether the declaratory action will increase friction between state and federal courts and improperly encroach upon state jurisdiction; and (5) whether there exists a more effective alternative remedy.  *Scottsdale*, 513 F.3d at 554.

Critical to the Court's determination here is the notion that "[d]eclining to exercise jurisdiction may be an abuse of discretion–even if all the factors set forth in *Scottsdale* weigh in favor of doing so–if 'a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court must address.'"  *Warren Chiropractic & Rehab Clinic*, 2015 WL 4724829, at * 21 (quoting *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 422 (6th Cir. 2007)).  "This is because, in such a case, the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources."  *Id.* (internal quotation marks and citations omitted).

Here, Defendants unpersuasively argue that each of the five *Scottsdale* factors support abstention.  The main problem with this argument is that it overlooks the fact that State Farm seeks monetary relief in addition to declaratory relief.  Moreover, State Farm's success on its

21

claim for monetary relief depends on the same allegations and proofs as its success on its claim for declaratory relief.  As such, the Court shall reject Defendants' argument to abstain from exercising jurisdiction on this basis.

## CONCLUSION & ORDER

For the foregoing reasons, the Court shall **DENY** Defendants' Motion to Dismiss (Doc. # 21).

**IT IS SO ORDERED.**

s/Sean F. Cox                                    
Sean F. Cox
United States District Judge

Dated:  March 6, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 6, 2017, by electronic and/or ordinary mail.

s/Jennifer McCoy        
Case Manager
