UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

State Farm Mutual Ins. Co.,

    Plaintiff,                                                      Case No. 16-13040

v.                                                                     Hon. Sean F. Cox

Elite Health Centers, Inc., *et. al.*,

    Defendants.
_____/

## **OPINION & ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") brings this action against 18 defendants. Specifically, State Farm claims that Defendants have submitted fraudulent claims to the insurer under Michigan's No-Fault Automobile Act. State Farm's complaint alleges several claims of common law fraud, civil conspiracy and unjust enrichment, and a count for declaratory judgment.

Currently before the Court is Defendant Chintan Desai's "Motion to Dismiss the Complaint for Failure to Join a Necessary Party and Failure to State a Claim." (Doc. # 58, Def.'s Mo."). Defendant brings his motion pursuant to Rules 9(b), 12(b)(6), 12(b)(7) and 19 of the Federal Rules of Civil Procedure. In his motion, Defendant advances two main arguments. First, Defendant argues that Plaintiff's complaint should be dismissed because State Farm failed to join Horizon Imaging, LLC. Defendant claims that Horizon is a necessary and indispensable party pursuant to Federal Rule of Civil Procedure 19. Defendant alternatively argues that the complaint's common law fraud, civil conspiracy, and unjust enrichment claims fail to state a claim upon which relief could be granted.

1

Defendant's motion has been fully briefed. The Court finds that oral argument would not significantly aid in the decisional process and therefore orders that the instant motion will be decided upon the briefs. *See* E.D. Mich. LR 7.1(f). For the reasons that follow, the Court shall **DENY** Defendant's motion.

## BACKGROUND

### A. Factual Background

Plaintiff State Farm is a corporation that engages in the business of insurance in Michigan. Plaintiff brings this action against 18 defendants, all of which played a role in an alleged scheme to defraud the insurer.

#### 1. The Defendants

At the center of the alleged scheme are Defendants Derek Lawrence Bittner, D.C., a chiropractor, and Mark A. Radom, a layperson. State Farm alleges that Bittner and Radom created, own and control several entities that: (1) submit bills and supporting documentation to State Farm Mutual for chiropractic, physical therapy and medical services purportedly rendered to patients that were not actually performed or were not medically necessary; (2) that prescribe and refer patients to two locations owned by Defendant Jayson Rosett for physical therapy services that are either not performed or not medically necessary; and (3) that refer State Farm Mutual insureds to receive medically unnecessary MRIs from Horizon Imaging, LLC and from Defendant Superior Diagnostics, Inc. (Compl. at ¶ 1).

##### a. The Elite Entities

Defendant Derek L. Bittner D.C., P.C. ("Bittner P.C.") is a Michigan professional corporation, formed in 2000. (Compl. at ¶ 203). Bittner is the resident agent and president.

Bittner's wife, Ryan Bittner, D.C., is the secretary. (*Id.*). Defendant Elite Chiropractic P.C. ("Elite Chiro") is a Michigan professional corporation formed in 2011. Derek Bittner is the resident agent and sole officer.

Bittner P.C. and Elite Chiro submitted bills to State Farm Mutual for chiropractic services purportedly rendered at four locations: Sterling Heights, Detroit, Westland, and Riverview. (Compl. at ¶ 205).

Defendant Elite Rehabilitation, Inc. ("Elite Rehab") is a Michigan domestic non-profit formed by Bittner in 2011. (Compl. at ¶ 206). Defendant Pure Rehabilitation, Inc., ("Pure Rehab") is a Michigan domestic non-profit corporation formed in March 2014 to replace Elite Rehab. (Compl. at ¶ 207). Defendant Elite Health Centers, Inc., ("Elite Health") is a Michigan domestic non-profit formed in 2011 by Bittner. (Compl. at ¶ 208).

From 2013 through June 2014, Elite Health submitted documentation for: (1) physical therapy under the assumed names Rehabilitation of Sterling Heights and Rehabilitation of Detroit; (2) for medical exams under the name Pain Specialists of Michigan; (3) for surgery consultations under the name Prime Neurosurgery Group; and (4) for neurological consultations under the name Pioneer Neurology Group. Defendant Midwest Medical Associates, Inc. ("Midwest Medical") is a Michigan domestic non-profit corporation formed in March 2014 to replace Elite Health.

### b. Defendant Chiropractors

Defendant Ryan Matthew Lukowski, D.C. ("Lukowski") is a licensed chiropractor. (Compl. at ¶ 211). From Approximately 2012 through approximately February 2013, Lukowski worked for the Elite Entities full-time at the Detroit location and once a week at the Sterling

3

Heights location.

Defendant Michael Patrick Draplin, D.C., ("Draplin") is a licensed chiropractor. (Compl. at ¶ 212). Draplin worked for the Elite Entities at the Detroit location, where he became the primary Elite chiropractor after Lukowski left.

State Farm alleges that Lukowski and Draplin: (1) falsely purported to provide legitimate chiropractic evaluations and treatment for a significant number of patients who were treated at Elite pursuant to the Predetermined Protocol; (2) referred patients to Elite doctors for medical exams pursuant to which medically unnecessary physical therapy could be prescribed; and (3) ordered medically unnecessary MRIs.

### c. The Elite Doctors

Defendant Noah Upfall, D.O. ("Upfall") is a licensed doctor of osteopathy. (Compl. at ¶ 213). Upfall worked for Elite Health and its successor, Midwest Medical, from 2011 through February 2014.

Defendant Mark J. Juska, M.D. ("Juska") is a licensed medical doctor. (Compl. at ¶ 214). Juska worked at Elite Health and its successor, Midwest Medical, from late 2013 through early 2015. Juska testified that: he was an employee of Michigan Sportsj and Spine Center, P.C. ("Michigan Sports"); his boss was Jeff S. Pierce, D.O., who is the president of Michigan Sports; Pierce arranged for him to work at Elite Health; there was a relationship or agreement between Elite Health and Michigan Sports; and that he was paid by Michigan sports, not Elite Health.

Upfall and Juska are alleged to have falsely examined, diagnosed and prescribed medically unnecessary physical therapy for patients who treated at the Elite Entities and made referrals to other Elite doctors and ordered medically unnecessary MRIs.

4

### d. MRI Defendants (Defendant Desai)

Defendant Superior Diagnostic, Inc. ("Superior") is a Michigan non-profit corporation formed in 2014. (Compl. at ¶ 215). Superior is owned by Bittner and Radom, either directly or indirectly through Midwest Medical, which in turn is owned by Bittner and Radom.

Bittner and Radom are alleged to have directed chiropractors, doctors and staff at the Elite Entities to steer patients to Superior for medically unnecessary MRIs to serve Radom's and Bittner's financial interests.

Defendant Chintan Desai, M.D. is a licensed doctor and works as an independent contractor with a teleradiology company where he remotely reviews MRIs for non-party Horizon Imaging, LLC, a mobile MRI truck located in a parking lot (in which Radom allegedly has a financial interest). (Compl. ¶¶ 22, 216). Defendant Michael J. Paley, M.D. ("Paley") is a licensed doctor and remotely reviews MRIs from non-party Horizon and Defendant Superior. (Compl. at ¶ 217).

Desai and Paley allegedly provided fraudulent MRI reports for patients who treated at Elite, which report abnormalities that do not exist and which over-read and exaggerate abnormalities that may exist.

### e. The Rosett Defendants

At all times relevant to this action, Defendant Jayson Rosett ("Rosett") owned Defendant Dearborn Center for Physical Therapy, LLC ("Dearborn Center") and Defendant Michigan Center for Physical Therapy, Inc. ("Michigan Center") (collectively, "the Rosett PT Entities"). (Compl. at ¶ 219).

Rosett is alleged to have directed the activities of those who were employed by and

associated with the Rosett PT Entities. From 2011 to present, the Rosett PT Entities allegedly submitted medical records and supporting documents, which were fraudulent in that they represented that physical therapy services were actually rendered and were medically necessary when, in fact, they were not.

### 2. Allegations Regarding Fraudulent Scheme

State Farm's 116-page complaint details Defendants' alleged schemed to defraud the insurer. The following is a broad overview of the alleged facts. Defendants' scheme is alleged to have began in or about 2011 and has continued uninterrupted since. State Farm alleges that Defendants Bittner and Radom are at the center of the scheme. To facilitate this scheme and to circumvent Michigan laws–which limit the circumstances under which a chiropractor and a layperson may own and control entities providing professional services–Bittner and Radom are alleged to have fraudulently incorporated several of the Defendant entities as non-profit corporations and have allegedly attempted to conceal their respective interests and roles in these entities. (Compl. at ¶ 2).

State Farm further alleges that each of the individual physicians and chiropractors who are named as defendants in this case are essential to the scheme because they falsely purported to examine, diagnose and either order or provide medically necessary services tailored to the unique needs of each patient. (Compl. at ¶ 3). The individual defendants are alleged to have examined and diagnosed patients based upon a "predetermined protocol" of chiropractic, physical therapy, medical and MRI services that are either not performed or are not medically necessary.

As a result of Defendants' material representations, State Farm alleges that it did not

discover, and should not have reasonably discovered, that its damages were attributable to fraud until recently.

**B.     Procedural Background**

On June 24, 2016, State Farm filed its complaint against all 18 Defendants and Horizon Imaging, LLC, which is now a non-party to the instant action. (*See* civil case no. 16-12380). The case was assigned to Judge Rosen. Horizon Imaging, LLC, was named as a defendant in seven of the ten counts. Because Judge Rosen determined that State Farm failed to sufficiently allege diversity with respect to Horizon, he dismissed the case on August 1, 2016.

Approximately one month later, on August 22, 2016, State Farm initiated the instant action. (Doc. # 1, Compl). Horizon Imaging, LLC, is not named as a defendant in this action, but allegations involving Horizon are still included in the complaint. This case was eventually transferred to the undersigned by text-only order.

State Farm has named 18 entities and individuals as defendants in this action: (1) Elite Health Centers, Inc.; (2) Elite Chiropractic, P.C.; (3) Elite Rehabilitation, Inc.; (4) Midwest Medical Associates, Inc.; (5) Pure Rehabilitation, Inc.; (6) Derek L. Bittner D.C., P.C.; (7) Mark A. Radom; (8) Derek Lawrence Bittner D.C.; (9) Ryan Matthew Lukowski D.C.; (10) Michael P. Draplin D.C.; (11) Noel H. Upfall D.O.; (12) Mark J. Juska; (13) Superior Diagnostic, Inc.; (14) Chintan Desai, M.D.; (15) Michael J. Paley; (16) Dearborn Center for Physical Therapy, LLC; (17) Michigan Center for Physical Therapy, Inc.; and (18) Jason Rosett. State Farm Mutual's complaint asserts the following claims:

> Count I     Common Law Fraud, against Bittner, Radom, Lukowski, Draplin, Juska, Upfall, Superior, Desai, Paley, Elite Chiro, Bittner P.C., Midwest Medical, Elite Health, Pure Rehab and Elite Rehab;

7

| | |
|---|---|
| Count II | Civil Conspiracy, against Bittner, Radom, Lukowski, Draplin, Upfall, Juska, Superior, Desai, Paley, Elite Chiro, Bittner P.C., Midwest Medical, Elite Health, Pure Rehab and Elite Rehab; |
| Count III | Unjust Enrichment, against Bittner, Radom, Lukowski, Draplin, Upfall, Juska, Superior, Desai, Paley, Elite Chiro, Bittner P.C., Midwest Medical, Elite Health, Pure Rehab and Elite Rehab; |
| Count IV | Common Law Fraud, against Bittner, Radom, Draplin, Upfall, Juska, Superior, Desai, Paley, Rosett, Elite Chiro, Bittner P.C., Midwest Medical, Elite Health and Rosett PT Entities; |
| Count V | Civil Conspiracy, against Bittner, Radom, Draplin, Upfall, Juska, Superior, Desai, Paley, Rosett, Elite Chiro, Bittner P.C., Midwest Medical, Elite Health and Rosett PT Entities; |
| Count VI | Unjust Enrichment, against Bittner, Radom, Draplin, Upfall, Juska, Superior, Desai, Paley, Rosett, Elite Chiro, Bittner P.C., Midwest Medical, Elite Health and Rosett PT Entities; |
| Count VII | Common Law Fraud, against Bittner, Radom and Superior; |
| Count VIII | Civil Conspiracy, against Bittner, Radom and Superior; |
| Count IX | Unjust Enrichment, against Bittner, Radom and Superior; and |
| Count X | Declaratory Judgment, against Elite Entities, Rosett PT Entities and Superior |

(Compl. at ¶¶ 222-271). State Farm seeks monetary and declaratory relief.

On October 24, 2016, Defendants Bittner, Bittner P.C., Draplin, Elite Chiro, Elite Health, Elite Rehab, Juska, Lukowski, Midwest Medical, Pure Rehab, Radom and Superior filed a Motion to Dismiss. (Doc. # 21, Def.s' Br.). Defendants Dearborn Center for Physical Therapy LLC, Michigan Center for Physical Therapy, Inc., Jayson Rosett, Michael J. Paley and Noel H. Upfall concurred in the filing of the motion. (Doc. # 26, 27, 42).

On March 6, 2017, this Court entered an Opinion & Order denying Defendants' Motion to Dismiss. (Doc. # 59, O&O). In its Opinion & Order, the Court determined, *inter alia*, that

8

Plaintiff's 116-page complaint was sufficiently detailed and that it satisfied the particularity requirement of Rule 9(b).

Defendant Desai filed the instant motion to dismiss on March 1, 2017 – five days before this Court issued its Opinion & Order. (Doc. # 58, Def.'s Mo.). In it, Defendant argues that the entire complaint should be dismissed because State Farm failed to join Horizon Imaging, LLC, a necessary and indispensable party. Alternatively, Defendant argues State Farm's common law fraud, civil conspiracy, and unjust enrichment claims fail because they are not plead with requisite specificity. State Farm filed a response to the motion (Doc. # 72, Pl.'s Resp.), Defendant filed a reply (Doc. # 73, Def.'s Reply). Based upon the arguments set forth in Defendant's reply, State Farm was permitted to file a sur-reply. (Doc. # 75, Pl.'s Sur-Reply).

## APPLICABLE STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

B.     **Federal Rule of Civil Procedure 12(b)(7)**

Federal Rule of Civil Procedure 12(b)(7) requires courts to dismiss a plaintiff's cause of action if the plaintiff fails "to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).

**ANALYSIS**

A.     **Whether Plaintiff's Failure to Join Horizon Warrants Dismissal of this Action**

Defendant argues that Horizon Imaging, LLC, is an indispensable party whose absence requires the Court to dismiss the instant action. Rule 19 governs whether a particular party is required to be joined to a lawsuit and, if yes, whether the court should proceed with the action in the event that joinder is not feasible.

In making this determination, courts employ a three-part test. "First, the court must determine whether the person or entity is a necessary party under Rule 19(a)." *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). "Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction." *Id.* "Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should in equity and good conscience dismiss the case because the absentee is indispensable." *Id.* (citation and internal quotation marks omitted).

Thus, a person or entity "is only indispensable, within the meaning of Rule 19, if (1) it is necessary, (2) its joinder cannot be effected, and (3) the court determines that it will dismiss the pending case rather than proceed in the case without the absentee." *Id.* (citation omitted).

1.     **Horizon Imaging Is Not A Necessary Party Under Rule 19(a)**

A party is necessary under Rule 19(a) if:

10

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)-(B). If the threshold requirements of Rule 19(a) are not satisfied, the Court need not engage in the Rule 19(b) inquiry. *See GGNSC Louisville Hillcreek, LLC v. Watkins*, 2016 WL 815295, at *3 (W.D. Ky. Feb. 29, 2016) ("Because the parties are not required to be joined under Rule 19(a), the Court need not address Rule 19(b)); *School Dist. of Pontiac v. Secretary of U.S. Dept. of Educ.*, 584 F.3d 253, 264-65 (6th Cir. 2009). Here, Defendant advances several arguments in support of his position that Horizon is a necessary party under Rule 19(a). The Court finds Defendant's arguments unpersuasive.

        **a.    Complete Relief**

First, Defendant summarily argues that "if Horizon is not joined the Court cannot 'accord complete relief among existing parties...'" (Def.'s Mo. at 12). In making this argument, Defendant merely points to the allegations in State Farm's complaint pertaining to Horizon's role in the fraudulent scheme. (*Id.*). Defendant's argument is without merit. Defendant is essentially arguing that Horizon is a necessary party because of the part it played in the alleged scheme, *i.e.*, because Horizon is a joint tortfeasor and is at the center of State Farm's allegations. However, '[a] person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party." *Temple v. Synthes Corp.*, 498 U.S. 5, 7-8, (1990); *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001).

To the extent that Defendant argues that complete relief cannot be accorded "[b]ecause State Farm is seeking return of funds paid to Horizon," this argument is equally unpersuasive. *See School Dist. of Pontiac*, 584 F.3d at 265 (explaining that complete relief is determined as between persons already parties, "and not as between a party and the absent person whose joinder is sought"). Accordingly, because State Farm brought this suit against 18 joint tortfeasors, the non-joinder of Horizon (to whom a percentage of the fault may be allocated), does not affect whether State Farm will be able to recover complete relief *as between itself and the 18 other defendants* in this case.

### b. Ability to Protect Interest

Next, Defendant argues that "there can be no dispute that Horizon has an interest related to the subject of this action and that it would have been joined if not for its status as a non-diverse party." (Def.'s Mo. at 11). Despite Defendant's assertions to the contrary, Horizon has not claimed an interest relating to this action.

However, even assuming that Horizon has claimed an interest, Defendant has not explained how Horizon's absence precludes it from protecting this interest. Instead, Defendant summarily concludes that "[p]roceeding in [Horizon's] absence will impede Horizon's ability to defend itself and protect its interests." (*Id*. at 11-12). This is not persuasive. Regardless of how Defendant dresses his argument, it is based on Horizon's status/conduct as a joint tortfeasor. If the Court were to accept Defendant's argument, then every absent tortfeasor would be considered a necessary party because the failure to join unavoidably deprives the absent party of an opportunity to defend.

Moreover, an absent party's interests are only "impeded when that party could become

12

legally bound by the result of the present action that they were not a part of." *Boggs v. Landmark 4 LLC*, 2012 WL 3485288, at *4 (N.D. Ohio Aug. 13, 2012) (citing *American Express Travel Related Servs. Co. v. Bank One–Dearborn*, 195 F. App'x 458, 461 (6th Cir. 2006)). In order for an absent party's interests to be legally bound by a previous action, the party must have had a full and fair opportunity to litigate the issue in the original suit. *Id.* (citation omitted).

Here, the resolution of the issues will not have a preclusive effect against Horizon because "it is not a party here" and therefore, it "will not have had a 'full and fair' opportunity to defendant itself . . . ." *Id.* at *4. Nor is State Farm seeking declaratory relief that would affect Horizon. To the extent that Defendant attempts to argue in his reply brief that he and Horizon are in privity and that res judicata may preclude Horizon from protecting its interests in the future, this argument is directly at odds with Defendant's statement in his motion that "[a]ny judgment rendered by this Court will not be binding on Horizon..." (Def.'s Mo. at 12).

Defendant further argues that even an "indirect effect" on a joint tortfeasor's interests may render the absent party necessary if its interests are more significant than those of a routine joint tortfeasor. (Def.'s Reply at 4). Defendant claims that Horizon's active participation in the alleged scheme renders its interests more significant than those of a routine joint tortfeasor. (*Id*. at 4). In making this argument, Defendant relies on *Boles v. Greeneville Housing Authority*, 468 F.2d 476 (6th Cir. 1972). However, *Boles* is clearly distinguishable.

In *Boles*, the plaintiffs brought an action for declaratory and injunctive relief as to a partially completed urban renewal project which had been approved by non-party Department of Housing and Developing ("HUD"). The Sixth Circuit noted that the plaintiffs' attack on the plan indirectly attacked non-party HUD's administrative decision to approve the plan. More

13

specifically, the court reasoned that HUD was "at least arguably indispensable" because in order to grant the relief sought by the plaintiffs, it would be compelled to hold that: (1) HUD misinterpreted its own guidelines; and (2) that HUD misconceived its function and prerogatives under the Urban Renewal Act. *Boles*, 468 F.2d at 479.

Here, unlike the plaintiffs in *Boles*, State Farm does not seek declaratory and injunctive relief as to a federal agency's interpretation of its own guidelines. In fact, State Farm does not seek declaratory relief that would implicate Horizon at all. Although Defendant asserts that Horizon's interests are indirectly affected, he fails to identify how. And the mere fact that the Court may evaluate Horizon's conduct in determining whether a fraudulent scheme exists, is insufficient to render Horizon's interests more significant than those of a routine joint tortfeasor.

Defendant also relies on *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 398 (11th Cir. 1999), for the proposition that an absent tortfeasor who emerges as an "active participant" in a complaint's allegations is a necessary party. (Def.'s Reply at 6). This argument is unpersuasive. Even assuming *Laker Airways* was binding upon the Court, it is distinguishable from the instant case. In *Laker Airways*, the court explained that the absent joint tortfeasor was the "only entity that can allocate slots at Gatwick Airport. Without [the absent tortfeasor], BA would not be able to manipulate ... the slot allocation process." *Laker Airways*, 182 F.3d at 848. Here, Horizon's role in the alleged scheme is not as significant as the absent tortfeasor's role in *Laker Airways*. More importantly, in *Laker Airways*, a finding against the named defendant would have led to specific, governmental action taken against the absent tortfeasor. *Id. (*"In order to prove its antitrust claims, Laker would be required to show that [the absent tortfeasor] acted in 'other than independent manner.' Such a ruling would surely implicate the interests of

[the absent tortfeasor] because the United Kingdom's enabling legislation, ASAR, requires that the Secretary of State for Transport withdraw its approval of an appointed coordinator if its behavior is not neutral."). Here, Defendant has not identified a specific legal interest that would be impaired by a finding in State Farm's favor.

### c. Substantial Risk of Incurring Double or Inconsistent Obligations

In his final attempt to bring Horizon within Rule 19(a)'s purview, Defendant argues that "if State Farm and/or Horizon are left to litigate their statutory rights/obligations in a different forum, this could expose Desai, a Florida resident, and others to the potential for multiple litigation in Michigan and inconsistent results." (Def.'s Mo. at 12-13). Defendant makes this argument without attempting to identify how he would be subject to multiple proceedings. Additionally, the Sixth Circuit has held that while it is possible that multiple proceedings and inconsistent results can occur when joint tortfeasors are not parties in the same suit, this possibility does not create the type of prejudice that warrants a finding that joint tortfeasors are necessary parties under Rule 19. *PainWebber Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001).

**B.    Whether State Farm Has Sufficiently Alleged Its Claims Against Defendant Desai**

Defendant alternatively argues that State Farm has failed to sufficiently allege its common law fraud, civil conspiracy and unjust enrichment claims against Defendant Desai. Defendant's arguments are without merit for the reasons below.

### 1.    Challenges to Fraud Claims

State Farm alleges common law fraud claims against Defendant Desai in Counts I and IV. Defendant argues that "State Farm's fraud allegations against Desai ... are wholly deficient." (Def.'s Mo. at 17). Specifically, Defendant argues that the fraud claims fail because: (1) the

claims fail to meet the heightened pleading requirements of Rule 9(b); (2) because Desai did not submit any bill to State Farm or make any statement to State Farm; and (3) because State Farm did not rely on Desai's MRIs.

Federal Rule of Civil Procedure 9(b) imposes a particularity requirement on fraud claims. For State Farm to meet the requirement, its complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (internal quotations and citations omitted). To this end, State Farm must, "at a minimum, ... allege the time, place and contents of the misrepresentation upon which they relied." *Id.* Accordingly, "[t]he threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff[']s claim of fraud." *Llewellyn Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 780-81 (E.D. Mich. 2014) (citation and internal quotation marks omitted).

Here, State Farm has provided a 116-page description of how the alleged scheme to defraud the insurer worked. Among the exhibits attached to the complaint are charts detailing the fraudulent services purportedly rendered to each patient, the dates of service and the amounts billed. (*See* Ex. 1, 3-5, 15, 17, 19-23 to Compl.).

State Farm's allegations and exhibits sufficiently put Defendant Desai on notice of the fraudulent misrepresentations he is alleged to have made: Desai is alleged to have knowingly provided fraudulent MRI reports for patients who treated at the Elite Entities. Numerous courts have similarly concluded that such documentation and explanation of the fraudulent scheme

satisfies Rule 9(b).  *See e.g. State Farm Mut. Auto Ins. Co. v. Universal Health Grp., Inc.*, 2014 WL 5427170, at *4 (E.D. Mich. Oct. 24, 2014); *State Farm Mut. Auto Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772 (E.D. Mich. 2015); *State Farm Mut. Auto Ins. Co. v. Physiomatrix, Inc*., 2014 WL 555199 (E.D. Mich. Feb. 12, 2014).  As such, State Farm's complaint provides a level of detail that is sufficient at the pleading stage to satisfy the particularity requirement of Rule 9(b).

To the extent that Defendant argues that he did not personally submit bills to State Farm, this argument is without merit.  State Farm has alleged that Defendant made fraudulent findings in MRI reports, intending State Farm to rely on such reports.  Defendant's fraudulent findings played a hand in causing bills to be submitted to State Farm.  At this juncture, State Farm's allegations are sufficient.  *See State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, 2014 WL 5427170, at *3 (E.D. Mich. Oct. 24, 2014) ("A party that causes a fraudulent bill to be submitted to an insurer may be as liable for fraud as the person whose name was on the fraudulent submission").

And finally, to the extent that Defendant argues that State Farm's fraud claims fail because State Farm could not or did not rely on any misrepresentation made by Defendant, this argument is without merit.  First, Defendant's argument as to whether or not State Farm relied on the MRI findings pertain to questions of fact, not sufficiency of the pleadings (*i.e.*, Defendant implies that the allegations are contradictory and/or self-serving).  Moreover, State Farm has alleged that it justifiably relied on Defendants' misrepresentations.  At this juncture, the Court must accept this as true.

    **2.**        **Challenges to Civil Conspiracy Claims**

State Farm alleges civil conspiracy claims against Defendant Desai in Counts II and V. Defendant argues that State Farm's civil conspiracy claims fail because: (1) the complaint fails to allege an underlying tort; and (2) the complaint fails to allege a conspiracy. (Def.'s Mo. at 23).

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose not lawful by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 358 (1992). A claim for civil conspiracy requires proof of an agreement to achieve the objective of the conspiracy. *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1341 (E.D. Mich. 2011). A plaintiff asserting civil conspiracy must also demonstrate some underlying tortious conduct because civil conspiracy is not an independently actionable tort. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 383 (2003). "Civil conspiracy claims must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts" are insufficient to state a claim. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Because State Farm has sufficiently alleged fraud as the underlying tort for its conspiracy claim, the Court need only address whether the conspiracy claim has been alleged with requisite specificity. Here, State Farm alleges that each defendant has acted in concert and knowingly and intentionally agreed and conspired to accomplish, through a common plan and design, an unlawful and common purpose, *i.e.*, to defraud the insurer through the submission of thousands of fraudulent bills and supporting documentation.

At this juncture, the Court finds that the claim that Desai knowingly conspired to defraud

18

State Farm is supported by allegations tending to show an agreement between Defendants. State Farm's 116-page complaint explains in detail each defendant's role in the overall conspiracy. In so doing, the complaint identifies the "predetermined protocol" that governed each Defendant's actions (*i.e.*, Defendants acted in furtherance of the conspiracy pursuant to a common plan) and it identifies the fraudulent reports and fraudulent bills submitted or caused to be submitted by Defendants.

### 3. Challenges to Unjust Enrichment Claims

State Farm alleges unjust enrichment claims against Defendant Desai in Counts III and VI. Defendant argues that the unjust enrichment claims fail because Defendant Desai "never billed State Farm for services nor did he receive any benefits from State Farm. It was Horizon who billed for MRI services and Horizon who was paid by State Farm for those services." (Def.'s Mo. at 23).

In order to sustain an unjust enrichment claim, a plaintiff must establish: "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195 (2006).

Here, the complaint alleges that State Farm conferred a benefit upon the individual defendants by paying their claims. The complaint further alleges that it would be inequitable to allow the individual defendants to retain the benefit of payments made for services that were not rendered or were not medically necessary. The complaint identifies which fraudulent services were billed, the dates of the services and the amounts billed. These allegations permit the Court to infer that Defendant Desai benefitted at the expense of State Farm, (*i.e.*, Defendant provided

fraudulent reports for unnecessary MRIs, State Farm relied on the fraudulent information, and Defendant was paid money for fraudulent reports).

## CONCLUSION & ORDER

For the foregoing reasons, the Court shall **DENY** Defendant Desai's Motion to Dismiss.

**IT IS SO ORDERED.**

s/Sean F. Cox  
Sean F. Cox  
United States District Judge

Dated: May 31, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 31, 2017, by electronic and/or ordinary mail.

s/Jennifer McCoy  
Case Manager