UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

       Plaintiff,

vs.

ELITE HEALTH CENTERS INC.,
ELITE CHIROPRACTIC, P.C.,
ELITE REHABILITATION, INC.,
MIDWEST MEDICAL
ASSOCIATES, INC., PURE
REHABILITATION, INC., DEREK
L. BITTNER D.C., P.C., MARK A.
RADOM, DEREK LAWRENCE
BITTNER, D.C., RYAN
MATTHEW LUKOWSKI, D.C.,
MICHAEL P. DRAPLIN, D.C.,
NOEL H. UPFALL, D.O., MARK
J. JUSKA, M.D., SUPERIOR
DIAGNOSTIC, INC., CHINTAN
DESAI, M.D., MICHAEL J.
PALEY, M.D., DEARBORN
CENTER FOR PHYSICAL
THERAPY, LLC, MICHIGAN
CENTER FOR PHYSICAL
THERAPY, INC., AND JAYSON
ROSETT,

       Defendants.

_____ /

Case No. 16-13040
Hon. Avern Cohn
Magistrate Judge Anthony P. Patti

**NONPARTY MICHAEL J. MORSE'S RESPONSE
IN OPPOSITION TO STATE FARM MUTUAL'S MOTION TO
COMPEL MICHAEL MORSE TO PRODUCE DOCUMENTS
<u>RESPONSIVE TO STATE FARM MUTUAL'S SUBPOENA</u>**

# TABLE OF CONTENTS

I.      CONCISE STATEMENT OF ISSUE PRESENTED.............................iv

II.     TABLE OF AUTHORITIES ...............................................................v

III.    CONTROLLING OR MOST APPROPRIATE AUTHORITIES......... vii

IV.     INTRODUCTION ............................................................................1

V.      RECENT PROCEDURAL HISTORY ..............................................4

       A.      Judge Cohn's Pronouncements Suggest That Further Discovery
                Should Be Limited....................................................................4

       B.      This Court's Recent Limited Ruling On State Farm's Request
                For Discovery From Nonparty Kenneth Jackson.................................4

       C.      State Farm's Prior Motion To Compel Against Morse Was
                Dismissed Because It Relied Upon Evidence From a Witness
                That Took The 5th....................................................................5

VI.     STATEMENT OF FACTS ...............................................................5

       A.      State Farm...................................................................................5

       B.      The Limited Scope Of The Existing Lawsuit .........................................5

       C.      Morse.........................................................................................6

       D.      Morse's Concerns Are Well-Founded In Light Of State Farm's
                Repeated Practice Of Abusing The Legal System ...............................8

              1.      State Farm's $250 Million RICO Settlement    In 2018
                        For Improper Judicial Interference .............................................8

              2.      State Farms "Mad Dog" Practices Against Plaintiffs'
                        Attorneys .................................................................................8

              3.      Morse's Law Firm Publicly Exposed In 2015 State
                        Farm's Reprehensible ACE Program  Which Underpaid
                        Its Michigan Insureds..............................................................10

E.  State Farm's Prior Attempt to Subpoena Documents From Morse's Law Firm Was Quashed In Material Part .............................12

F.  The Subpoena At Issue Here And Morse's Objections .....................13

G.  State Farm Requested From Defendants The Same Documents It Seeks From Morse ............................................................................15

H.  Morse's Law Firm's 126 Clients Have Not Consented To Morse's Production Of Their Information To State Farm In This Lawsuit ...................................................................................15

I.  State Farm's Own Motion Demonstrates Its Improper Purpose Here ...............................................................................................16

    1.  The Motion Does Not Seek Information About Whether Defendants' Services Were Medically Necessary ...................16

    2.  State Farm's Motion Focuses On "Facts" That It Knows Are Wrong Or Do Not Matter...................................................16

        a.  The Attorney Grievance Commission Complaint Against Morse..................................................................16

        b.  Horizon ........................................................................16

        c.  The HI Investor And Radom Loans ...............................17

        d.  State Farm Does Not Need Discovery To Establish Truisms ........................................................................19

J.  The Subpoenas To Other Nonparties For Morse Related Information ....................................................................................19

K.  The Undue Burden On Morse ...........................................................20

    1.  The 126 Clients Files ...................................................................20

    2.  The Undue Burden Regarding The Other Information Requests ...................................................................................22

L.  Privilege Review ............................................................................22

M.  The Insufficient Existing Protective Order .........................................22

**VII.   ARGUMENT** ............................................................................**23**

    A.    The Standard On Whether A Subpoena To A Nonparty Should Be Enforced ................................................................23

        1.    The Standard Under Rule 26 ....................................................23

        2.    The Special Additional Protections For Nonparties Under Rule 45 ...............................................24

    B.    Applying These Principles, State Farm's Motion To Enforce The Morse Subpoena Should Be Denied ............................................26

        1.    State Farm May Not Take Discovery To Investigate A Nonparty Like Morse ................................................27

        2.    State Farm May Also Not Obtain Discovery From Morse For Use In Other Matters ............................................28

        3.    State Farm May Not Take Discovery Of Its Opposing Counsel In 559 Current And 6000 Past Matters .......................32

        4.    State Farm's Motion Fails To Show Proportionality ...............34

        5.    State Farm May Not Take Discovery On How Morse's Law Firm Obtains Clients ............................................34

        6.    State Farm's Request for "All" Documents Is Improper ..........35

        7.    State Farm's Motion Should Be Denied ..................................35

        8.    In Any Event, State Farm's Motion Should Be Dismissed Because It Relies On Statements From Gunabalan And Rosett ...........................................36

    C.    In The Alternative, The Morse Subpoena Should Be Limited To The 221 Insureds .......................................37

**VIII.  CONCLUSION** ...........................................................................**38**

## I.   <u>CONCISE STATEMENT OF ISSUE PRESENTED</u>

Whether State Farm's Motion to compel against Michael Morse, a nonparty, should be denied where:

A.   None of the requested documents directly relate to State Farm's claim that defendants' services were not medically necessary or performed;

B.   State Farm may not use discovery to investigate Morse, a nonparty;

C.   State Farm has an enormous economic interest in misusing the discovery process to try to harm Morse and deter him from bringing claims on his clients' behalf against State Farm;

D.   State Farm is abusing the discovery process, including by using its subpoena to investigate Morse and its motion to publicly spread false information about him, and there is substantial concern that State Farm will misuse the information it seeks given its longstanding practice of (i) "mad dog" tactics against plaintiffs' attorneys and (ii) abusing the legal system;

E.   None of State Farm's requests are proportional to the issues in the case;

F.   State Farm can obtain the requested information, if it were relevant, from the defendants;

G.   The subpoena imposes an undue burden upon Morse; and

H.   State Farm's prior request for similar information from Morse's law firm in another one of its lawsuits claiming fraudulent billing was previously denied in material part by Magistrate Judge David Grand, including for the reasons set forth above.

I.   State Farm's Motion relies upon statements from Gunabalan in violation of this Court's October 31, 2018 Order (DE 349).

## II.    TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott v Wyoming County Sheriff's Office*,
   2017 WL 2115381 (WDNY, May 16, 2017).......................................24

*Campbell v State Farm*,
   65 P 3d 1134 (Utah 2001), *rev'd on other grounds, State Farm v
   Campbell*, 538 US 408 (2003) ...................................................8, 10

*Cusumano v Microsoft Corp*,
   162 F 3d 708 (1st Cir 1998)........................................................25

*Deluxe Financial Services LLC v Shaw*,
   2017 WL 7369890 (D MN 2017) ................................................25

*End Product Results, LLC v Dental USA, Inc.*,
   2013 WL 12247127 (E.D. Mich. Oct. 10, 2013)...............................33

*In Re Grand Jury Proceedings*,
   73 FRD 647 (MD Fla 1977) .......................................................37

*In Re Grand Jury Subpoena Duces Tecum (Vesco)*,
   391 F Supp 1029 (SDNY 1975) ..................................................37

*Hale v State Farm*,
   12-cv-00600 (SD Ill)..................................................................8

*Haworth, Inc v Herman Miller, Inc*,
   998 F 2d 975 (Fed Cir 1993) .....................................................25

*Insulate America v Masco Corp*,
   227 FRD 427 (WD NC 2005).................................................30, 31

*Jaguar Land Rover Limited v Bombardier Recreational Products, Inc*,
   2018 WL 2276640 (E.D. Mich. May 18, 2018) ...............................33

*McCurdy v Wedgewood Capital Mgmt Co*,
   1998 US Dist LEXIS 18875 (ED PA 1998) ....................................28

*In re: Modern Plastic Corp*,
890 F3d 244 (6th Cir 2018) ...........................................................25, 38

*Nationwide Mut Ins Co v Home Ins Co*,
278 F3d 621 (6th Cir 2002) ...............................................................33

*Noble Roman's, Inc v Hattenhauer Distributing Co*,
314 FRD 304 (SD IN 2016)................................................. viii, 23, 25

*Perrigo Co v United*,
294 F Supp 3d ...................................................................................25

*Roberts v Shawnee Mission Ford*,
352 F3d 358, 361-62 (8th Cir 2003).....................................................27

*State Farm Mut Auto Ins Co v Physiomatrix, Inc.*,
2013 WL 10936871 (ED Mich, November 26, 2013)...............................*passim*

*Tucker v American International Group, Inc*,
281 FRD 85 (D Conn 2012) .........................................................31, 32

*United States v Nobles*,
422 US 225 (1975)..............................................................................37

*United States v United Shoe Mach Corp*,
89 F Supp 357 (D Mass 1950)...........................................................38

*Updike v Clackamas County*,
2016 WL 111424 (D OR, January 11, 2016) ........................... viii, 24

*Visteon v National Fire Ins Co*,
2008 WL 2026131 (ED Mich 2008)....................................................35

*Zenith Radio Corp v Radio Corp of America*,
12 F Supp 792 (D Del 1954)...............................................................37

### OTHER AUTHORITIES

Fed R Civ P 45(d)(1) and (d)(2)(B)(ii) ................................................25

Federal Rules of Civil Procedure Rules 26 and 45 ............................... viii

Wright and Miller, *Federal Practice and Procedure*, §2040 ...................29

## III.   CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Rules 26 and 45 of the Federal Rules of Civil Procedure

*Noble Roman's, Inc. v Hattenhauer Distributing Co*, 314 FRD 304 (SD IN 2016)

*State Farm Mut Auto Ins Co v Physiomatrix, Inc.*, 2013 WL 10936871 (ED Mich, November 26, 2013)

*Updike v Clackamas County*, 2016 WL 111424 (D OR, January 11, 2016)

## IV.   __INTRODUCTION__

State Farm Mutual Automobile Insurance Company ("State Farm") sued the defendants for fraud to recover the $1 million it previously paid them for services for 221 insureds.   State Farm now claims that none of these services were medically necessary or performed.   The focus of this case should be on State Farm's actual claims and these medical services.

Instead, State Farm has used this lawsuit as a pretext to try to obtain broad discovery from nonparty Michael J. Morse ("Morse") and several other nonparties affiliated with him.   Morse owns the Mike Morse Law Firm PLLC (the "Law Firm") which specializes in automobile accident claims and which has asserted over 6,000 claims against State Farm.   To advance its enormous business interest in trying to reduce the number of claims the Law Firm brings, State Farm decided to improperly try to use this lawsuit to investigate Morse, and attempt to harm him publicly.

However, the discovery that State Farm seeks against nonparty Morse (which includes his dealings with 12 other nonparties) has *nothing* to do with whether the medical services at issue were necessary or actually performed.   *None* of State Farm's document requests directly relates to what this case is about. Knowing this, State Farm's motion never attempts to show how the requested

documents actually tie to its asserted claim that the medical services were not necessary or performed.

State Farm is abusing the discovery process. The Court should quash the Morse subpoena in total for a host of reasons, including because:

A.   Well-settled law prohibits State Farm from using discovery to investigate Morse, a nonparty.

B.   None of the information requested from Morse relates to whether the services at issue were medically necessary or performed.

C.   The Morse subpoena does not seek any information that is proportional to the needs of this $1 million case.

D.   State Farm may not use this case to take discovery of its opposing counsel in 559 current and 6000 past matters.

E.   State Farm's improper purpose here is consistent with its: (i) judicially determined policy of "mad dog" tactics against attorneys (like Morse) who assert numerous claims against it and (ii) its abuse of the judicial process in other matters. [1]

F.   State Farm's previous attempt to subpoena similar information from Morse's Law Firm in 2013 in an earlier fraudulent billing case (and before the Federal Rules were amended to further protect nonparties) was denied by Magistrate Judge David Grand in material part because, like here, State Farm had the improper purpose there of using discovery to investigate Morse.

G.   The subpoena imposes an undue burden on Morse, a nonparty.

H.   State Farm's motion relies upon statements from Gunabalan in violation of this Court's October 31, 2018 Order.

---

[1] To further its improper purposes, State Farm has used its Motion as a "document dump" of 114 exhibits. However, none of these exhibits address whether defendants' services to the 221 insureds were medically necessary.

Simply put, State Farm has issued well over 100 subpoenas and it has run amok with respect to nonparty discovery.  The Court should put an end to this.  State Farm's Motion should be denied in total.

In the alternative, the Court should greatly limit the subpoena and require Morse to produce only non-privileged documents that directly relate to the treatment of the 221 insureds at issue here.[2]   Under no circumstances, should Morse, a non-party, be required to produce documents that do not directly relate to the 221 insureds or that:

      A.    Involve Morse's dealings with the 12 other nonparties for which State Farm seeks information;

      B.    Involve Horizon Imaging, LLC ("Horizon") and its constituent entities because they are not parties to this action and State Farm dismissed its earlier lawsuit against Horizon with prejudice; or

      C.    Are covered by applicable privileges or can be obtained from the defendants.

Moreover, in light of the legitimate concern that State Farm is using its subpoena for improper purposes, the Court should prohibit State Farm from using any documents produced by Morse in connection with any other action or proceeding or sharing the documents with others for their use in other matters.

Morse asks the Court to protect him from State Farm's abuse of the discovery process here.

---

[2] State Farm has not yet provided Morse with the names of the 221 insureds.

3

## V.   RECENT PROCEDURAL HISTORY

### A.   Judge Cohn's Pronouncements Suggest That Further Discovery Should Be Limited

Immediately after the Honorable Avern Cohn became the new judge presiding over this case, he questioned at a November 16, 2018 hearing whether State Farm's real objectives were unrelated to its claims and *already* achieved:

> One could question whether or not State Farm hasn't achieved its objectives, as I gather them from my read of the newspaper as of now … .

Ex P (November 16, 2018 Tr.) at 12.

Judge Cohn then foreshadowed that his approach will be different:

> I would say I appreciate that other judges have dealt with this case and they have dealt with it in a manner that perhaps I wouldn't have dealt with it, but this case was filed August 22, 2016, and it's now scheduled for trial sometime in 2020, and there has been a lot of lateral movement but not much forward movement … . [*Id.*]

### B.   This Court's Recent Limited Ruling On State Farm's Request For Discovery From Nonparty Kenneth Jackson

State Farm issued a subpoena similar to the Morse subpoena to nonparty Kenneth Jackson who in the past acted as a private investigator for Morse.  In this Court's August 18, 2018 Order (DE 281) with respect to State Farm's motion to compel against Kenneth Jackson, this Court ordered that:

> Jackson's responses to the subpoena will be limited to the "221 Patients" identified by State Farm Mutual.

4

**C.      State Farm's Prior Motion To Compel Against Morse Was Dismissed
Because It Relied Upon Evidence From a Witness That Took The 5th**

In its October 31, 2018 Order (DE 349), this Court dismissed without
prejudice State Farm's then pending Motion to Compel against Morse (DE 170)
because it improperly relied upon Gunabalan's Affidavit when Gunabalan had
exercised his Fifth Amendment rights when asked about it at his deposition.  The
Court ruled that in any future discovery motions, "the parties cannot attach,
reference, or otherwise rely on the Gunabalan Affidavit or the statements made
therein."

As explained below, State Farm has violated the Court's October 31, 2018
Order because its renewed motion to compel against Morse relies upon documents
referenced in, and attached to, Gunabalan's Affidavit and for which he took the 5th
when he was asked to authenticate them at his deposition.  State Farm's new
motion also relies upon exhibits produced by Jayson Rosett even though he, too,
took the 5th at his deposition as to all questions about Morse or this case.

## VI.      STATEMENT OF FACTS

**A.      State Farm**

State Farm in the second largest automobile insurer in the State of Michigan.

**B.      The Limited Scope Of The Existing Lawsuit**

State Farm filed this lawsuit against medical clinics, doctors, and others
claiming that the defendants engaged in fraud beginning in 2011 with respect to

221 of its insureds by submitting bills for services that were not medically necessary or performed.  State Farm asserts claims for fraud, unjust enrichment and conspiracy and seeks to recover the $1 million it paid these providers. Complaint, ¶¶ 1, 227, 231, 235.

The Complaint does *not* claim that the defendants paid kickbacks, or that any of the clinics had a secret owner, or that insureds were unlawfully solicited. State Farm's 116 page complaint never even mentions Morse's name.

**C.**   **Morse**

Morse is *not* a party to this lawsuit.  And the time passed long ago to add new parties.

Morse owns the Law Firm which is Michigan's largest automobile accident law firm.  Automobile accident claims are asserted directly against the client's insurance company for covered no-fault benefits ("First Party Claims") or against the insured third party who caused the accident ("Third Party Claims").  Ex A (Morse Aff).

On behalf of its clients, Morse's Law Firm has asserted over *6,000 claims* against State Farm, either First Party Claims directly against it or Third Party Claims against its insureds.  *Id*.  State Farm has paid on most of these claims. Moreover, whenever State Farm refuses to pay a fair settlement and the case is tried to a verdict, the Law Firm's clients obtain a verdict in their favor against State

Farm in a substantial portion of those cases. *Id*. As of today, Morse's law firm has at least 559 active matters against State Farm. *Id*.

State Farm asserts that Morse's Law Firm represented 126 of the 221 insureds that are at issue in this case. State Farm has not provided Morse with the names of its 221 insureds at issue, or the 126 insureds which his law firm allegedly represented, because Morse has not consented to the existing protective order as it is inadequate. Ex A; Ex B (Morse subpoena) at cover letter and p 2 of rider at #10 (State Farm refuses to identify the 221 insureds unless Morse signs protective order). If the Law Firm did represent these 126 insureds, they would represent a miniscule percentage of the 6,000 clients it has represented against State Farm.

State Farm has offered ***no*** evidence that Morse knew that medical services were allegedly fraudulently provided to these 126 clients. In fact, the objective evidence is to the contrary, especially given that State Farm admits it paid the very claims at issue here because it too believed they were proper at the time. Complaint, ¶ 197.

Morse has serious concerns that State Farm issued this subpoena for improper purposes, including to:

1. Obtain information to help it defend the auto accident claims that his Law Firm brings;

2. Attempt to deter Morse from suing State Farm in the future;

3. Share the information that State Farm obtains with others; and

4. Attempt to harm Morse's public standing through false or misleading accusations.

Ex. A

### D.  Morse's Concerns Are Well-Founded In Light Of State Farm's Repeated Practice Of Abusing The Legal System

Morse's concerns are well-founded. State Farm has a longstanding practice of abusing the legal system.

#### 1.  State Farm's $250 Million RICO Settlement In 2018 For Improper Judicial Interference

In *Hale v State Farm*, 12-cv-00600 (SD Ill), plaintiffs sued State Farm alleging it engaged in a RICO enterprise to wrongfully, and successfully, influence the Illinois Supreme Court to reverse the $1.05 billion judgment against State Farm that was entered in favor of 4.7 million policyholders arising out of its improper use of inferior quality parts to repair its insureds' vehicles. On September 4, 2018, the day of trial, State Farm agreed to pay $250 million to settle this RICO case which arose out of its efforts to wrongfully manipulate the legal system. Ex. H (September 4, 2018 Law360 Article).

#### 2.  State Farms "Mad Dog" Practices Against Plaintiffs' Attorneys

In *Campbell v State Farm*, 65 P 3d 1134 (Utah 2001), *rev'd on other grounds, State Farm v Campbell*, 538 US 408 (2003)(finding $145 million punitive damages award constitutionally excessive), the Utah Supreme Court bluntly described the "reprehensible" way State Farm has conducted business across the

8

country for decades and the "mad dog" tactics it uses against plaintiff's attorneys who file claims against it.

> First, State Farm repeatedly and deliberately *deceived and cheated* its customers via the PP & R scheme. For over two decades, State Farm set monthly payment caps and individually rewarded those insurance adjusters who paid less than the market value for claims. *Id*. at 18-19. Agents changed the contents of files, lied to customers, and committed other dishonest and fraudulent acts in order to meet financial goals. … As the trial court found, State Farm's fraudulent practices were consistently directed to persons - poor racial or ethnic minorities, women, and elderly individuals - who State Farm believed would be less likely to object or take legal action.

> Second, State Farm engaged in *deliberate concealment* and destruction of all documents related to this profit scheme… .

> Third, State Farm has *systematically harassed and intimidated opposing* claimants, witnesses, and *attorneys*. *Id*. at 33-37. … There was also evidence that State Farm actually instructs its attorneys and claim superintendents to employ "*mad dog defense tactics*" - using the company's large resources to "wear out" opposing attorneys by prolonging litigation, making meritless objections, claiming false privileges, destroying documents, and abusing the law and motion process. *Id*. at 36-37.

> … Moreover, State Farm has strategically concealed "evidence of [its] improper motive" to shield itself from liability, which was furthered by State Farm's treatment of opposing witnesses and counsel. ... Such conduct is malicious, *reprehensible*, and wrong.

> \* \* \*

> … *In light of State Farm's decades-long policy of fraudulent and dishonest practices in its handling of claims*, *it*

9

> *is difficult to imagine how such ingrained policies of corporate*
> *culture can be easily or quickly changed.*

65 P3d at 1148, 1150 (emphasis added).   As predicted in *Campbell*, these

reprehensible State Farm business practices have not stopped.  In fact, as explained

below, Morse's Law Firm recently exposed that they continue in Michigan.

### 3.   Morse's Law Firm Publicly Exposed In 2015 State Farm's Reprehensible ACE Program Which Underpaid Its Michigan Insureds

In Michigan, despite the *Campbell* decision, State Farm subsequently

adopted and employed its Advancing Claims Excellence ("ACE") program which

had as its goal the systematic underpayment of its insureds and that used

intimidation tactics to accomplish this goal.   Morse's Law Firm was able to

discover and expose the ACE program and then described the ACE program in a

2015 published article and at seminars it conducted in Michigan. [3]   Ex C (ACE

Article); Ex D (Seminar Announcements); Ex E (Examples of ACE documents). [4]

As part of the ACE program, State Farm trained its adjusters to underpay

and take advantage of its insureds.  In its 2015 article about the ACE Program, the

Law Firm exposed (with actual quotes from the ACE documents) that:

---

[3] Morse's Law Firm was able to get the protective order lifted which had enabled State Farm to protect these documents.  Ex F (Order).

[4] State Farm's improper activities have also continued elsewhere.  *See*, for example, Ex G, which is an ABC News report detailing a 2013 jury verdict against State Farm relating to its widespread fraud in handling Hurricane Katrina claims.

Regarding negotiations, adjusters were specifically trained to "always lowball because you're never sure what a plaintiff might accept." They were trained to "pass the buck," by being untruthful and saying they have no more authority and management will never give them more. Also, they were trained to always ask that the customer waive his or her future ability to claim medical treatment from State Farm as part of the settlement. The training was summarized for State Farm adjusters as follows:

> "*Time Tactics*:
> Delay
> Deadline
> Done Deal
>
> *Hidden Agenda Tactics:*
> Surprise
> Silence
> Fake Out"

Ex C at 24 (footnotes omitted). The article then quotes verbatim from another ACE document in which State Farm proclaimed it opposes claims without proof:

> We must be more willing to fight for what is right even if we may not have all of the necessary proof on our side. . . and if that can't be understood and accepted [customers] must find another insurance company. [*Id.*]

The Ace documents also confirmed State Farm's practice of using so-called "independent" medical examiners (called IMEs or DMEs) to terminate the no fault benefits of their insureds prematurely. State Farm refers a high percentage of its insureds to these IMEs who were not independent and who are paid to

11

routinely find that virtually every one of its insureds is not injured, or no longer injured. *Id* at 20-25.

Morse's Law Firm surely incurred State Farm's wrath when it exposed how it wrongly treats its insureds.

**E.     State Farm's Prior Attempt to Subpoena Documents**
       **From Morse's Law Firm Was Quashed In Material Part**

In 2013, in another case State Farm brought against allegedly fraudulent medical providers, State Farm sought to subpoena documents from both Morse's Law Firm and another law firm, which were each nonparties. *State Farm Mut Auto Ins Co v Physiomatrix, Inc,* 2013 WL 10936871 (ED Mich November 26, 2013) (Exhibit I).  As explained in the argument section below, Magistrate Judge David Grand, in his November 26, 2013 Opinion, held that there were real concerns that State Farm would misuse any information it obtained and denied State Farm's attempt to take discovery from the Law Firm, a nonparty, to investigate it or determine whether State Farm had claims against it.  In particular, the Court there denied State Farm's attempt to take discovery with respect to how Morse obtains or solicits his clients, finding it had nothing to do with a lawsuit over whether services were medically necessary.

Undaunted, State Farm, in this smaller $1 million case, once again, attempts to improperly obtain information from Morse.

12

**F.**  **The Subpoena At Issue Here And Morse's Objections**

State Farm served Morse with a subpoena which demanded the production of 16 categories of documents.  Ex B (Subpoena).

The Morse subpoena seeks voluminous information from him, including with respect to Morse's dealings with *12 other nonparties*, including Med-Lien Solutions; Plaintiff Investment Funding, LLC; Accident Information Bureau of Michigan, LLC; D&M Management, LLC; DJ&M Management, LLC; Todd Franklin; Eliot Bank; Horizon Imaging, LLC; HI Investor LLC; HI Group, LLC; MI Imaging; and the Law Firm.

The State Farm subpoena seeks "all" documents relating to Morse's dealings with the 12 nonparties and with the defendants that are wholly unrelated to the 221 insureds, including communications and financial relationships. Morse served State Farm with his objections to the subpoena which state:

1.  Morse objects to the subpoena in total because State Farm seeks discovery from Morse for the improper purpose of obtaining information:

   A.  To be used to defend actions brought by Morse's law firm's clients and against State Farm or its insureds;

   B.  To be used to attempt to assert a claim against Morse or his law firm in this action, or another action; and/or

   C.  To share with other person(s) for use in their potential actions or proceedings that involve Morse.

\* \* \*

13

2.      Morse further objects to the subpoena in total because:

        A.      None of the requested documents directly relate to the core issues in this proceeding regarding whether the services at issue were performed and medically necessary;

        B.      The subpoena imposes an undue burden and expense that is not proportional to the needs of the case;

        C.      The requested documents can be obtained from other sources, including the defendants; …

                      *   *   *

3.      To the extent State Farm is permitted to subpoena documents from Morse despite Morse's objections above, Morse objects to producing any documents until a protective order is first entered which prohibits State Farm from:

        A.      Using documents that Morse produces (or the information contained within them) in connection with any other action or proceeding; or

        B.      Sharing the documents that Morse produces (or the information within them) with any person or entity for potential use in any other action or proceeding.

4.      To the extent that Morse is required to produce documents despite Morse's objections above, then Morse further objects to producing documents:

        A.      That relate to his dealings with persons or entities who are not parties to this action ("Nonparties");

                      *   *   *

        C.      That relate to Horizon because State Farm previously sued Horizon and then settled with Horizon and

dismissed all of its claims so all of State Farm's Horizon related claims are now foreclosed;

D.    That relate to the "Patients" because State Farm has not provided the names of the 221 Patients;

\* \* \*

F.    To the extent such documents are protected from disclosure by the work product rule or any applicable federal or state privilege or privacy law, . . . which determination Morse cannot make until after it is determined whether he is required to produce any documents and, if so, the categories of such documents . . . .

Ex J (Morse Objections).

## G.    State Farm Requested From Defendants The Same Documents It Seeks From Morse

It is undisputed that State Farm has sent comprehensive document requests to the defendants seeking the same information covered by the subpoena to nonparty Morse.

## H.    Morse's Law Firm's 126 Clients Have Not Consented To Morse's Production Of Their Information To State Farm In This Lawsuit

State Farm has not produced any evidence that the 126 insureds who were apparently Law Firm clients (State Farm has not disclosed their identities) have consented to the release of any of their information to State Farm in this case (in which the insureds are not a party), including information concerning them that may be covered by the attorney-client privilege, the medical privilege, the work product rule or privacy laws.

15

## I.   State Farm's Own Motion Demonstrates Its Improper Purpose Here

### 1.   The Motion Does Not Seek Information About Whether Defendants' Services Were Medically Necessary

State Farm does not claim that any of the documents requested in the Morse subpoena seek information that directly relates to whether defendants' services were medically necessary or performed.  In fact, in its 40 page Brief, State Farm never even mentions this.  *Not once*.

### 2.   State Farm's Motion Focuses On "Facts" That It Knows Are Wrong Or Do Not Matter

#### a.   The Attorney Grievance Commission Complaint Against Morse

State Farm points to the Attorney Grievance Commission's assertion of a formal complaint against Morse for unlawful solicitation.  However, that matter was dismissed with prejudice, after a hearing, because the Attorney Discipline Board determined that "professional misconduct was not established."  Ex. K (Order of Dismissal).  State Farm's citation to this dismissed formal complaint confirms that it knowingly distorts the purported "facts" in its Motion.

#### b.   Horizon

Much of State Farm's Brief focuses on Horizon and its constituent entities, including HI Investor LLC and HI Group, LLC.  However, Horizon and its constituent entities are *not* defendants in this case.

16

And, importantly, State Farm earlier sued Horizon in 2014 in a separate RICO lawsuit and then settled its claims and dismissed Horizon with prejudice. Ex L (Horizon dismissal). As a result, all of State Farm's claims with respect to Horizon are now barred.

Despite this, Horizon is a main, and improper, focus of State Farm's subpoena to Morse.

### c.    The HI Investor And Radom Loans

State Farm's Motion contends that HI Investors and/or Radom have paid Morse over $2 million, including: $1.1 million pursuant to a Commitment to Loan (which commitment states that Morse intends to use the lent funds to acquire, through a private placement, an interest in a real estate investment not generally available to the public); $669,558 to purchase a home for Morse's wife in connection with their divorce; and $555,925 to purchase the home next to Morse's existing home.

State Farm has not been straight with this Court. *State Farm knows these monies were fully repaid*. In fact, State Farm is in possession of documents that confirm full repayment of these sums – both from discovery produced by others and from Morse's Response to State Farm's earlier Motion to compel against him (which this Court dismissed without prejudice). Nevertheless, consistent with its

17

improper purpose, State Farm persists in blatantly distorting the facts.   The indisputable facts are that:

    1.    In full satisfaction of the $1.1 million loan, Morse assigned back to HI Investors the very interest in the real estate venture that he acquired with those loan proceeds.  Ex M (Assignment).

    2.    Morse fully repaid the $669,558 for the purchase of Morse's wife's new home on the *same* day he received it.[5] Ex N (wire transfer).

    3.    Morse fully repaid the $555,925 that was provided for the purchase of the home next to him.  Ex O (check).

It is incredible that State Farm continues to conceal these facts from the Court.

And, in its renewed Motion, State Farm makes the new false allegation that Radom purchased a Lincoln Navigator for Morse.  State Farm has *no* facts that can support this allegation because Morse can prove he fully paid for this vehicle.

However, State Farm should not be permitted to create a sideshow with its false accusations.  State Farm is not entitled to explanations for, or to know more information about, these transactions because they are none of State Farm's business and do not directly relate to whether the defendants' medical services to the 221 insureds were necessary or performed.[6] The focus of this case should be

---

[5] Morse's former wife is Radom's sister.

[6] The same is true as to the $100,000 payment to Morse's airplane leasing company.  It is common knowledge that people who own airplanes rent excess time on their plane to others.

on the claim that State Farm actually pled that the defendants' services were not

medically necessary or performed.

### d. State Farm Does Not Need Discovery To Establish Truisms

It is common sense, and a truism, that:

1.  It is in Morse's financial interest for his clients to succeed on their claims against State Farm.

2.  It was in the defendants' interest for Morse's clients to succeed on their claims against State Farm because that facilitated payment for their services.

This case is not advanced by additional discovery as to these matters from

nonparties.

## J. The Subpoenas To Other Nonparties For Morse Related Information

State Farm has also subpoenaed several nonparties for information related to

Morse (the "Other Nonparties"), including subpoenas to:

1.  ROCO Management, LLC, for documents related to Morse's investments in its apartment complexes.

2.  Jackier Gould, a law firm that has represented Morse and represents ROCO, for information related to Morse.

3.  Harriet Morse, Morse's ex-wife, for information related to their divorce.

None of the information requested from these Other Nonparties directly relates to

whether Defendants' services were medically necessary or performed and none

was the subject of State Farm's subpoena to Morse.

19

Morse has objected to these subpoenas to the Other Nonparties because they seek information as to him that State Farm is not entitled to receive for all of the reasons set forth herein.  State Farm also should not be able to make an end run around him by seeking information about him from the Other Nonparties.

**K.**     **The Undue Burden On Morse**

    **1.**     **The 126 Clients Files**

If Morse were required to produce his Law Firm's documents relating to the 126 clients (even though the Law Firm was not subpoenaed), the documents are likely to be voluminous and require substantial time to review.[7]  The average Morse Law Firm file with respect to a State Farm matter contains thousands of pages of documents, and, as to the larger matters, the file may have 10,000 pages or more.   The typical file contains a wide range of information, including: privileged communications with the client; medical records; internal communications within the Law Firm; notes, including notes of conversations and that analyze the claim; communications with investigators and contractors; communications with experts, including medical experts; pleadings; discovery; letters; emails; communications with the insurance company or its attorney; and settlement related documents.  Ex A.

---

[7] Morse does not know the actual size of these files because State Farm has not provided the names of these 126 clients.

For the average claim file, it would take about 10 hours to review the file and to determine which documents could be responsive to the subpoena and whether any of the applicable privileges or protections against disclosure apply and to prepare a privilege log. Morse thus may incur over 1260 hours in time just to review the files for the 126 clients and prepare a privilege log. *Id*.

On top of these 1260 hours, Morse would need to incur the cost of his outside attorney to consult on the process and review the privilege logs and review some of the documents. This will add another substantial layer of expense. *Id*.

State Farm will then likely contest the withholding of documents based on privilege, so there will be another additional significant consumption of attorney time dealing with State Farm and subsequent court proceedings.

Given all of this, this burden should not be imposed on Morse when the information State Farm seeks can be obtained from the other defendants to the extent it relates to *their* handling of the 126 Matters.[8]  And, to the extent State Farm previously litigated the claims made by any of these 126 clients, it already has this information from that prior litigation. And, as explained below, if Morse is required to undertake this burden, State Farm should be required to compensate his Law Firm for its time.

---

[8] After all, the claims in this case are against them and relate to *their* handling of the matter.

21

2.    **The Undue Burden Regarding The
      Other Information Requests**

The Morse subpoena also seeks "all" documents relating to a host of other matters, including his dealings with 12 other nonparties, and how he conducts business with them, and his dealings with the defendants in general.  If the subpoena were enforced as to these matters, it would require a very substantial time commitment to review Morse's dealings with the 12 nonparties and the defendants to determine which documents are responsive and whether applicable privileges apply to any of the requested documents.  Ex. A.  Given that Morse has a good faith belief (especially given the prior *Physiomatrix* decision) that the Morse subpoena should not be enforced, Morse has not yet undertaken the undue burden of this effort and should not be required to do so before the Court reviews this matter.

L.    **Privilege Review**

To the extent the Court orders the production of any documents, Morse requests that it be subject to Morse's right to assert applicable privileges with respect to any responsive documents.

M.    **The Insufficient Existing Protective Order**

Under the existing protective order (DE 82 at ¶10), State Farm may use any information that Morse produces in *other* cases and can share that information with *others* (unless Morse can prove the information is confidential). This does not

22

protect Morse against State Farm's improper use of documents, including

documents that do not meet the threshold for confidentiality under the protective

order.  To the extent Morse is required to produce any documents, there should be

an absolute protective order that prohibits State Farm from using any information

in any other case and that prohibits State Farm from sharing any information with

any other person or entity.

## VII.  ARGUMENT

### A.    The Standard On Whether A Subpoena
        To A Nonparty Should Be Enforced

#### 1.    The Standard Under Rule 26

Rule 26(b)(1), as amended in 2015, provides:

> …Parties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit.

The Court thus applies a balancing test under Rule 26(b)(1) to determine whether

proposed discovery, even if relevant, is proportional and should be allowed.  *See*

*e.g. Noble Roman's, Inc. v Hattenhauer Distributing Co*, 314 FRD 304, 311 (SD

IN 2016) (party seeking discovery must show *both* that the requested information is relevant and that it is proportional to the needs of the case).[9]

Moreover, even if relevant and proportional, discovery may be denied under Rule 26(b)(2)(C) when it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."

And even if proposed discovery is relevant, it should be denied when its utility will constitute "diminishing returns." *Updike v Clackamas County*, 2016 WL 111424 (D OR, January 11, 2016) ("As more discovery is obtained, more is learned. But at some point, discovery yields only diminishing returns and increasing expenses" and "greater delay"); *Abbott v Wyoming County Sheriff's Office*, 2017 WL 2115381 (WDNY, May 16, 2017) ("Considerations of proportionality" include whether further "discovery production has reached a point of diminishing returns").

## 2.     The Special Additional Protections
##         For Nonparties Under Rule 45

Where the discovery is sought from a nonparty, there are special concerns and additional protections under Rule 45. Under no circumstances may a nonparty be put to an "undue burden or expense", and the party issuing a subpoena has an

---

[9] State Farm's motion never tries to show how the discovery against Morse could possibly be proportional to this $1 Million case.

affirmative duty to avoid doing so, and the Court must enforce that duty and protect the nonparty from the cost of compliance. Fed R Civ P 45(d)(1) and (d)(2)(B)(ii); *In re: Modern Plastic Corp,* 890 F3d 244 (6th Cir 2018). The Court also gives "special weight" to objections made by nonparties. *Deluxe Financial Services LLC v Shaw*, 2017 WL 7369890 (D MN 2017).

Therefore, discovery directed to a nonparty will be denied, even when that nonparty is the owner of a party, when the propounding party cannot show the discovery is "reasonably necessary." *Noble Roman's, supra* at 312 (Court prohibits enforcement of nonparty subpoena where discovery has "run amok" and the requested discovery "fails the proportionality test" because it is "too far afield from the contested issues in this case"). See *Perrigo Co v United* States, 294 F Supp 3d 740 (WD Mich 2018) (request to obtain information from nonparty denied after court reviewed whether the requested information was necessary).

Given these concerns, where discovery is sought from a nonparty, courts often deny the discovery and require instead that the information be obtained from a party. *Perrigo, supra* (discovery denied from nonparty where information could be obtained from party); *Haworth, Inc v Herman Miller, Inc*, 998 F 2d 975, 978 (Fed Cir 1993) (discovery should be obtained from the plaintiff before "burdening the nonparty"); *Cusumano v Microsoft Corp*, 162 F 3d 708, 717 (1st Cir 1998)

("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs").

**B.      Applying These Principles, State Farm's Motion To
Enforce The Morse Subpoena Should Be Denied**

Morse is not a party in this case.  The scheme that State Farm alleged in the complaint is that the defendants fraudulently charged for medical services that were not necessary or performed.  Complaint, ¶¶ 222-271 (Counts I-X).  State Farm's 116 page complaint never alleges that Morse was part of that improper scheme or that he received kickbacks or any improper payments or that he unlawfully solicited clients.  State Farm never mentions Morse's name in the complaint.

State Farm completely ignores – and effectively asks this Court to ignore – the actual claims and scheme that it asserted in its complaint.  That is because the claims that State Farm actually pled do not align with the discovery it wants from Morse.  There is not a single request in the subpoena that seeks information that directly relates to whether defendants' services were medically necessary or performed.

Under these circumstances, State Farm should not be permitted to enforce any portion of the Morse subpoena.  This case turns completely on whether defendants submitted fraudulent bills. State Farm's Complaint does *not* allege that

Morse was part of the fraud.  The documents requested from Morse are not directly related to what State Farm alleged and must prove to prevail.

**1.    State Farm May Not Take Discovery To Investigate A Nonparty Like Morse**

State Farm effectively concedes that the purpose of its subpoena is to investigate Morse, a nonparty, and learn how he conducts business and determine whether it has a claim against him.  However, State Farm may not take discovery against Morse for these purposes.  In *State Farm v Physiomatrix,* Magistrate Judge David Grand expressly held that State Farm may not take discovery to investigate Morse's Law Firm or determine whether it has claims against him or it:

> *...State Farm argues that the information is necessary to allow it to determine whether it should add the [law] firms as parties to the action. However, discovery is not a fishing expedition, and the desire to investigate other entities to determine whether they should become parties to a case is a misuse of the broad leniency offered by the Federal Rules.* A complaint is not "a hunting license to discovery whether, in fact, a viable claim may be alleged . . . The discovery rules are designed to support a properly pleaded cause of action and to prepare for defenses to charges made – not to discover whether a claim exists.

Ex I at *10 (emphasis added).

Consistent with Magistrate Judge Grand's ruling, it is well-settled that State Farm may not use discovery to determine whether it has a potential claim against Morse.  See e.g. *Roberts v Shawnee Mission Ford,* Inc, 352 F3d 358, 361-62 (8th

Cir 2003) (rejecting "investigatory/prosecutorial" basis for subpoena to nonparties and affirming quashing of subpoena as to them); *McCurdy v Wedgewood Capital Mgmt Co*, 1998 US Dist LEXIS 18875 (ED PA 1998).  In *McCurdy*, the Court, in rejecting an effort to investigate a nonparty there, collected the law that prohibits such discovery:

> A complaint is not "a hunting license to discover whether, in fact, a viable claim may be alleged . . . The discovery rules are designed to support a properly pleaded cause of action and to prepare defenses to charges made - not to discover whether a claim exists." *American Communications Ass'n.  Local 10, I.B.T. v Retirement Plan for Employees of RCA Corp. and Subsidiary Cos.*, 488 F. Supp. 479, 484  (S.D.N.Y., aff'd without opinion, 646 F.2d 559 (2d Cir.  1980); *McLaughlin v Copeland*, 455 F. Supp. 749, 753 (D.Del. 1978), aff'd, 595 F.2d 1213 (3d Cir. 1979)(table) (… plaintiff is not entitled to discovery for the purpose of determining whether or not there may be a factual basis for a claim he has not made"); *See also Cardio-Medical Ass'n v Crozer Chester Medical Center*, 536 F. Supp. 1065,  1071  (E.D.  Pa.  1982)  (citing  American Communications with approval). Consequently, Plaintiff is not entitled to discovery merely to determine whether or not additional, unasserted claims might exist.

State Farm may not take discovery from nonparty Morse to investigate him or determine whether it has a claim against him.

## 2.    State Farm May Also Not Obtain Discovery From Morse For Use In Other Matters

Courts are vigilant to protect nonparties when the party seeking the discovery may use the information to advance its interests in other matters outside

the instant litigation.  As explained in Wright and Miller, *Federal Practice and Procedure*, §2040:

> The courts are alert to preventing discovery procedures in federal civil actions from being employed merely as a device to obtain evidence for use in some other proceeding in which discovery is less extensive.  The scope of discovery may be limited to prevent this from happening, or discovery in the civil action may be stayed pending termination of the other proceeding, or other remedies may be resorted to.

Here, there is a legitimate concern that State Farm seeks to obtain broad discovery from Morse in this action for other purposes, including to understand how Morse conducts business so it can better defend other cases brought by Morse against State Farm or deter his asserting claims against State Farm or provide the information to others to use against Morse.  Morse is in need of this Court's protection.

And that is exactly what Magistrate Judge David Grand held in *State Farm Mut Auto Ins Co v Physiomatrix, Inc*.  There, in quashing most of State Farm's subpoena to Morse's Law Firm, Magistrate Judge David Grand in his November 26, 2013 Opinion held:

> *...Permitting limitless discovery of these firms' files, even conceding that a protective order exists in this case preventing the misuse of obtained information, could still provide State Farm with a wealth of information not truly relevant to the claims here, but which could bleed over, intentionally or unintentionally, into other cases State Farm handles against these firms. Against this backdrop, the Court considers Morse and Weiner's first objection – to the relevancy of the various categories of documents sought – weighs that relevancy*

> *against the potential for abuse and the burden on the*
> *producing party, and finds that Morse and Weiner have*
> *sustained their burden as to at least some of the evidence*
> *State Farm seeks to discover.*

Ex I at *8 (emphasis added).

To the same effect is *Insulate America v Masco Corp*, 227 FRD 427 (WD NC 2005), where the Court protected the nonparty from a subpoena.  There, the Court denied a request for discovery against a nonparty where the party seeking the information was a competitor who could misuse the information:

> Even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit. …
>
> \* \* \*
>
> The documents sought in the subpoenas seek confidential confirmation of Insulate, which was clearly established in the affidavit of the president of Insulate. ... In addition, the Georgia plaintiffs and the defendants are competitors of Insulate's members.  [T]he defendants could use Insulate's confidential information in an effort to cause Insulate or its members to cease business operations.  … The defendants and the plaintiff in the Georgia action as competitors of Insulate could easily gain financial advantage over Insulate and it members by use of the information requested in the subpoenas of the defendants. The defendants argue that a Protective Order issued in the Georgia action would alleviate any concerns of Insulate. However, the defendants themselves have questioned whether or not the Protective Order adequately protects confidential information of the parties in the Georgia action. …

227 FRD at 432-433. In light of this situation, and after balancing the competing interests, the *Insulate* Court quashed virtually the entire subpoena to the nonparty.

Similar protections were afforded a nonparty in *Tucker v American International Group, Inc*, 281 FRD 85 (D Conn 2012). There, the Court denied a plaintiff's effort to obtain discovery from a nonparty, especially where some of the requested information was alleged to be confidential or privileged and would require the nonparty to take burdensome steps to review the documents. As the *Tucker* Court explained:

> In performing [the balancing test], courts have considered the fact that discovery is being sought *from a third or non-party*, which weighs against permitting discovery. *See, e.g., Medical Components, Inc. v Classic Medical, Inc., 210 F.R.D. 175, 180 n. 9 (M.D.N.C.2002)* ("The current generally prevailing view is that the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a non-party, and that the court should give special weight to the unwanted burden thrust upon non-parties when evaluating the balance of competing needs."). ...
>
> * * *
>
> . . . Marsh is not a party in this case and would be subjected to significant burden and expense in the event of the requested inspection. These are significant factors.
>
> * * *
>
> In addition to any business disruption Marsh might endure, Marsh would also face "a host of confidentiality concerns." Doc. # 67, p. 21. If Tucker's expert were to review and copy its computer hard drives, plaintiff would gain improper access to Marsh's proprietary business information as well as information regarding Marsh's clients for whom Marsh

acts as a broker. Plaintiff would also have access to information protected by the attorney-client privilege. The only means of preventing such inappropriate disclosure would be for Marsh to have counsel present to review each document before allowing plaintiff's expert to view it—a procedure engendering what Marsh describes as a "huge, unnecessary expense." *Id*. That expense would greatly expand were Marsh to then have to compose a privilege log to protect such documents. *Id*. Even if plaintiff were required to pay Datatrack to perform the proposed inspection, Marsh would necessarily bear the hefty expense involved in protecting confidential documents from disclosure.

281 FRD at 92, 96-97. Therefore, the Court denied the discovery because of the legitimate concerns Marsh raised and did not require him to incur the unnecessary and burdensome expense of a privilege log. The Court here should likewise deny the discovery because of the legitimate concerns Morse has raised, including his misuse concerns and the fact that the requested documents do not seek information as to the core issues in this case and do not seek information proportional to the $1 million claim.

### 3.    State Farm May Not Take Discovery Of Its Opposing Counsel In 559 Current And 6000 Past Matters

State Farm seeks to take discovery of Morse, who is its opposing counsel in 559 current matters and 6000 past matters. Given the potential for abuse with discovery from opposing counsel, the Sixth Circuit has established an extremely high bar which must be overcome before such discovery is permitted. In

*Nationwide Mut. Ins Co v Home Ins Co*, 278 F3d 621, 628 (6th Cir 2002), the Sixth

Circuit held:

> Discovery from an opposing counsel is "limited to
> where the party seeking to take the deposition has
> shown that (1) no other means exist to obtain the
> information …; (2) the information sought is
> relevant and nonprivileged; and (3) the information
> is crucial to the preparation of the case."

Here, State Farm has not even tried to show, and cannot show, that the

information it seeks from Morse is "crucial" or that it has no other means to obtain

the information.  In fact, State Farm never even attempts to show how the

documents requested from Morse are even directly relevant to any claim it has

actually asserted against the defendants.  *Nationwide* bars enforcement of State

Farm's subpoena.  *See Jaguar Land Rover Limited v Bombardier Recreational*

*Products, Inc.*, 2018 WL 2276640, at *2 (E.D. Mich. May 18, 2018) (Judge Drain

holds defendants failed to meet the "stringent" *Nationwide* standard to depose

opponent's in-house counsel); *End Product Results, LLC v Dental USA, Inc.*, 2013

WL 12247127, at *3-4 (E.D. Mich. Oct. 10, 2013) (Magistrate Judge Grand

applies *Nationwide*, finds that discovery from opposing counsel is "disfavored"

and that party seeking such discovery bears the heavy burden of justifying such

discovery and quashes the subpoena because party seeking the discovery failed to

carry its high burden).

**4.**    <u>**State Farm's Motion Fails To Show Proportionality**</u>

Even though it has the burden to do so, State Farm's Motion completely fails to even try to establish that its document requests to Morse are proportional to this case and the amount at issue.  The motion should be denied because State Farm has not—and cannot—meet its burden of establishing that its subpoena satisfies the proportionality requirement.  This is because the requested information does not directly relate to whether defendants' medical services were necessary or performed.

**5.**    <u>**State Farm May Not Take Discovery On How Morse's Law Firm Obtains Clients**</u>

This case concerns whether defendants issued fraudulent bills to State Farm with respect to 221 insureds, including 126 of Morse's purported clients.  The 126 clients constitute a miniscule portion of the 6000 clients that Morse's Law Firm has represented against State Farm.  Without regard to whether defendants engaged in fraud as to these 126 Matters. State Farm is not entitled to take discovery from Morse to determine how his Law firm obtains its clients generally or even as to these particular clients.   As the Court explained in *State Farm v Physiomatrix* when it previously denied this specific State Farm request:

> The Court rejects State Farm's argument that the independent relationship between the firms and their clients lies within the relevance boundary.

Ex I at *8.

6.     **State Farm's Request for "All" Documents Is Improper**

Each category of the Morse subpoena seeks "all" documents as to that category.  Such a request for "all" documents is improper and should not be enforced.  *Visteon v National Fire Ins Co*, 2008 WL 2026131 (ED Mich 2008) (Magistrate Judge Majzoub denies enforcement of request seeking "all" documents as overbroad and not narrowly tailored).

7.     **State Farm's Motion Should Be Denied**

Based on the foregoing facts and authorities, the Morse Subpoena (and the subpoenas against other nonparties for Morse related information) should not be enforced for a host of reasons, including because:

a.     Morse is a nonparty and State Farm may not use this lawsuit to investigate him.

b.     The information State Farm requests from Morse is not directly relevant to its claim that defendants' medical services were not necessary or performed, and State Farm has not even tried to (and cannot) tie its document requests to any claim asserted in its complaint.

c.     State Farm's requested discovery is not proportional to the claims State Farm has asserted.

d.     State Farm's attempt to take discovery from its opposing counsel in 559 current matters (and 6000 past matters) is not permitted where State Farm has not shown that the discovery is "crucial" and unavailable from any other source.

e.     State Farm has an improper and ulterior motive to discover how Morse conducts his law firm and prosecutes his cases and State Farm will use that information to its advantage in the other

matters where they are adversaries (and cannot be trusted not to).

f.     State Farm has not disclosed to Morse the identity of the 221 insureds at issue, or his Law Firm's purported 126 clients, and, as a result, Morse cannot produce information concerning them.

g.     Under *Physiomatrix,* State Farm is not permitted to obtain from Morse information as to how it acquired, solicited or handled its 126 client matters because Morse is not a defendant here and its conduct is not at issue.

h.     Morse will incur an undue burden and expense to produce responsive documents and should not be required to do so.

i.     Applying the balancing and proportionality test under Rule 26 and the undue burden test under Rule 45, any arguable need by State Farm for the requested information (whether as the 126 clients or not) is substantially outweighed by the undue burden placed on Morse, a nonparty, and the improper purpose, and misuse and overbroad concerns, State Farm's ability to obtain information from the defendants and the fact that none of the requested information directly relates to the issues in this case.

The Court should not enforce the Morse subpoena, or the subpoenas to Other Nonparties, for Morse related information.

## 8.     In Any Event, State Farm's Motion Should Be Dismissed Because It Relies On Statements From Gunabalan And Rosett

In violation of this Court's October 31, 2018 Order (DE 349), State Farm's Motion relies upon documents referenced in, and attached to, Gunabalan's Affidavit even though he took the 5th when asked to authenticate them. Compare: DE 170 at ex 3 (Gunabalan Affidavit at exs 7-9, 11); DE 327 at ex 4 (Gunabalan

36

Dep) at 75-76, 172, 174, 193; and exs 3-6 to State Farm's Motion.  These exhibits are the same.  Under this Court's October 31, 2018 Order, State Farm was barred from relying on the Gunabalan Affidavit which referenced these same documents because he took the 5th when asked to authenticate them.  As a sanction, State Farm's Motion should be denied.

Likewise, Rosett has now been deposed and he took the 5th on every question relating to his case.  Ex Q (Rosett Dep).  Applying the Court's analogous Gunabalan ruling to the Rosett situation, State Farm's Motion should also be dismissed because it relies upon "documents" from Rosett when he has totally taken the 5th on all questions about Morse or this case.  Ex. Q.

## C.   In The Alternative, The Morse Subpoena Should Be Limited To The 221 Insureds

In the alternative, if the Court requires Morse to produce any documents, it should be limited to non-privileged documents relating to the treatment of the 221 insureds.  And Morse should be entitled to assert all applicable privileges with respect to whatever documents, if any, he is required to produce[10] and the Court

---

[10] Morse cannot produce information covered by his Law Firm's clients' privileges without each of the client's consent.  *See e.g., United States v Nobles*, 422 US 225, 238-39 (1975)(work product protection extends to nonlawyer agents of attorney, including investigators); *In Re Grand Jury Subpoena Duces Tecum (Vesco)*, 391 F Supp 1029 (SDNY 1975)(attorney may raise privilege where client has not consented); *In Re Grand Jury Proceedings*, 73 FRD 647 (MD Fla 1977)(client must consent to waiver of privilege); *Zenith Radio Corp v Radio Corp of America*, 12 F Supp 792 (D Del 1954)(privilege extends to all persons,

should enter a protective order that prohibits State Farm from (i) sharing or disclosing any of the contents of such documents (or disclosing that it possesses such documents) with any person or (ii) using the documents or their contents in any other matter.[11]

Finally, State Farm should be required to fully compensate Morse for the cost of producing any responsive documents and dealing with this discovery motion. *In re: Modern Plastic*, 890 F3d 244 (6th Cir 2018).

## VIII. CONCLUSION

For all the foregoing reasons, State Farm's Motion should be denied.

/s/ I.W. Winsten
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
Detroit, MI 48226-2506
(313) 465-7608
iww@honigman.com
(P30528)
Attorneys For Nonparty Morse

Date: February 5, 2019

---

including nonlawyers, working as the attorney's agent); *United States v United Shoe Mach Corp*, 89 F Supp 357 (D Mass 1950)(same).

[11] For the reasons explained in *Physiomatrix*, such a protective order will still be inadequate.

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 5, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record and I hereby certify that I mailed the foregoing papers by United States Postal Service to the non-ECF participants.

<u>/s/ I.W. Winsten</u>
2290 First National Building
Detroit, MI 48226-2506
(313) 465-7608
iww@honigman.com
(P30528)
Attorneys For Nonparty Morse

29867609.2