UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,                                    Case No. 2:16-cv-13040
                                            District Judge Avern Cohn
            Plaintiff,                      Magistrate Judge Anthony P. Patti

v.

ELITE HEALTH CENTERS, INC.,
ELITE CHIROPRACTIC, P.C.,
ELITE REHABILITATION, INC.,
MIDWEST MEDICAL
ASSOCIATES, INC., PURE
REHABILITATION, INC., DEREK
L. BITTNER, D.C., P.C., MARK A.
RADOM, DEREK LAWRENCE
BITTNER, D.C., RYAN MATTHEW
LUKOWSKI, D.C., MICHAEL P.
DRAPLIN, D.C., NOEL H. UPFALL,
D.O., MARK J. JUSKA, M.D.,
SUPERIOR DIAGNOSTICS, INC.,
CHINTAN DESAI, M.D., MICHAEL
J. PALEY, M.D., DEARBORN
CENTER FOR PHYSICAL
THERAPY, L.L.C., MICHIGAN
CENTER FOR PHYSICAL
THERAPY, INC., and JAYSON
ROSETT

            Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART STATE FARM MUTUAL'S MOTION TO COMPEL KEN JACKSON AND K JACKS INVESTIGATIVE CONSULTING TO PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENAS (DE 156)

# I.   Background

This matter is before the Court for consideration of Plaintiff State Farm

Mutual Automobile Insurance Company's ("State Farm Mutual") motion to

compel non-parties Ken Jackson and K Jacks Investigative Consulting (hereinafter

collectively "Jackson") to produce documents responsive to subpoenas (DE 156),

Jackson's response in opposition (DE 185), State Farm Mutual's reply brief (DE

234), the joint statement of resolved and unresolved issues (DE 242-2), and the

parties' supplemental briefing as requested by the Court (DEs 301, 306.).

In its motion, State Farm Mutual seeks to compel Jackson to comply with

two subpoenas served on them.  (DE 156.)  According to State Farm Mutual:

> The Subpoenas each request the same 15 tailored categories of
> documents reflecting or relating to (1) relationships between Jackson
> and Defendants, Horizon Imaging, LLC ("Horizon"), and related third
> parties (including (a) Morse, (b) the AIB Entities, (c) D&M
> Management, (d) the companies through which Radom held an interest
> in Horizon, HI Group and HI Investor (the "Horizon LLCs"), (e) known
> runner Fred Schwarze, and (f) the litigation-funding companies,
> Plaintiff Investment Funding ("PIF") and Med Lien Solutions ("Med
> Lien"), and their owners, Todd Franklin and Eliot Bank) (together
> "Related Third Parties"), (2) Jackson's role in patient solicitation,
> including patients at issue in this case, (3) his status as a private
> investigator, and (4) ownership of K Jacks.

(*Id.* at 12.)  State Farm Mutual asserts that Jackson produced two professional

licenses and three deposition transcripts in response to the subpoenas, but

otherwise objected to the requests. (*Id.* at 12-13.) Jackson responds that State Farm Mutual's subpoenas are overbroad, unduly burdensome, seek irrelevant information, and seek information protected by the investigator-client and attorney-client privileges. Jackson further argues that the existing protective order is insufficient to protect any documents produced in response to the subpoenas. (DE 185).

A hearing on this motion was held on August 3, 2018, and the Court entered an interim order providing, in part, that:

1. The parties are not required to agree to an additional protective order, beyond the supplemental/amended protective order the parties stipulated on the record to have entered (regarding the ability of interested parties to designate materials as confidential), as the existing Stipulated Protective Order provides adequate protection to nonparties, and counsel for Jackson agrees to execute and abide by the current Stipulated Protective Order (DE 82).

2. Jackson's March 22, 2018 and April 13, 2018 objections to the January 31, 2018 subpoena issued by State Farm Mutual and served on February 17, 2018, *with the exception of objections based on privilege*, are **overruled** because they constitute improper and unsupported general objections and for any other reasons stated on the record. However, Jacksons' responses to the subpoena will be limited to the "221 Patients" identified by State Farm Mutual.

(DE 281 at 3 (emphases added).) As a result of this interim ruling, the only remaining issue is Jackson's objections to the subpoenas based on privilege. The Court therefore held this motion in abeyance and ordered: (1) Jackson to produce a privilege log, as required by Fed. R. Civ. P. 45(e)(2)(A); and, (2) the parties to

provide supplemental briefing to the Court on the issue of the investigator-client privilege. (*Id.* at 3-4.)

Jackson provided a privilege log to State Farm Mutual dated August 17, 2018, and on August 31, 2018, State Farm Mutual and Jackson each submitted their supplemental briefs regarding the investigator-client privilege. (DEs 301, 306, 306-2.)

## II. Legal Standard

The Court has broad discretion to determine the scope of discovery. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). The scope of discovery, which permits a party to obtain "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," is always subject to being "limited by court order[,]" and thus, within the sound discretion of the Court. Fed. R. Civ. P. 26(b)(1). Further, discovery is more liberal than even the trial setting, as Rule 26(b) allows information that "need not be admissible in evidence" to be discoverable. *Id.* However, the Court must also balance the "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am.*

*Axle & Mfg., Inc.,* 326 F. App'x 900, 907 (6th Cir. 2009) (quoting *Bush,* 161 F.3d at 367).

"A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *Knight Capital Partners Corp. v. Henkel Ag & Co., KGaA*, 290 F.Supp.3d 681, 685 (E.D. Mich. 2017) (citations omitted). "A person withholding subpoenaed information under a claim that it is privileged … must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A); *see also* Fed. R. Civ. P. 26(b)(5)(A). The burden is on the party asserting the privilege. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983).

## III. Discussion

### A. The Private Investigator-Client Privilege

#### 1. Federal Rule of Evidence 501

Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501; *see also Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1513 (6th Cir. 1990) ("In a civil case involving claims based on state law, the existence of a privilege is to be determined in accordance with state, not

federal law."). Plaintiff's complaint alleges only state law claims, and the state law of privileges therefore governs in this case.

## 2. Michigan's investigator-client privilege

Michigan law provides for a statutory investigator-client privilege. Specifically, Michigan's Professional Investigator Licensure Act, MCL 338.821, *et seq.*, which provides for the regulation and licensing of private detectives, provides, in relevant part:

> (1) Any person who is or has been an employee of a licensee shall not divulge to anyone other than his or her employer or former employer, or as the employer shall direct, *except as he or she may be required by law*, any information acquired by him or her during his or her employment in respect to any of the work to which he or she shall have been assigned by the employer….

> (2) Any principal, manager, or employee of a licensee who willfully furnishes false information to clients, or who willfully sells, divulges, or otherwise discloses to other than clients, *except as may be required by law*, any information acquired during employment by the client is guilty of a misdemeanor and is subject to summary suspension of license and revocation of license upon satisfactory proof of the offense to the department. **Any communications, oral or written, furnished by a professional or client to a licensee, or any information secured in connection with an assignment for a client, is considered privileged with the same authority and dignity as are other privileged communications recognized by the courts of this state.**

MCL 338.840 (emphases added). The Act defines "investigation business" to mean, in relevant part:

> (e) … a business that, for a fee, reward, or other consideration, engages in business or accepts employment to furnish, or subcontracts or agrees

to make, or makes an investigation for the purpose of obtaining information with reference to any of the following:

***

(ii) The identify, habits, conduct, business, occupation, honesty, integrity, credibility, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations, associations, transactions, acts, reputation or character of a person;

MCL § 338.822(e).

Michigan courts have explained that "the statutory privilege is two-fold: it protects first, 'communications … furnished by … [the] client to the licensee,' and second, 'information secured in connection with an assignment for a client….'" *In re Investigation of Death of White*, 256 Mich. App. 39, 46 (Mich. App. 2003) (quoting MCL § 338.840(2)). "The statute reflects the Legislature's determination that *broad protection* is to be accorded the private detective-client relationship. *Any* communication by a client to a licensee and *any* information secured in connection with an assignment for a client is privileged." *Ravary v. Reed*, 163 Mich. App. 447, 451-52 (Mich. App. 1987) (emphases added). Thus, "this provision would forbid the investigator from disclosing communications, facts, evidence, or other types of information that the investigator obtained during the course of his employment, even if he did not develop that information himself, but merely learned of it by overhearing discussions or reviewing documents," so long as the information is "related to the particular assignment on which the investigator is employed." *Death of White*, 256 Mich. App. at 47-48 (noting that "any

information" "applies to *all* information without regard to the nature of the information (i.e., verbal, written, documentary, photographic, and so forth)") (emphasis in original). The Michigan Court of Appeals explained that "[t]he Legislature's express extension to those communications of the authority and dignity conferred upon other, judicially recognized privileged communications prompts us to construe the scope of this privilege by analogy to the attorney-client privilege." *Ravary*, 163 Mich. App. at 452 & n.4 (citing *Wigmore*, EVIDENCE, for the basis for finding that the statute "clearly establishes a testimonial privilege").

Few federal courts have discussed the Michigan statutory private investigator-client privilege found in MCL 338.840. Some courts that have addressed the statute have declined to apply the privilege because jurisdiction in those cases was based on federal question, and federal common law does not recognize a privilege with respect to private investigators. *See State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2013 WL 10936871, at *14 (E.D. Mich. Nov. 26, 2013); *Design Basics LLC v. Campbellsport Bldg. Supply Inc.*, 99 F.Supp.3d 899, 915 (E.D. Wisc. 2015); *see also Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 524-25 (N.D. Fla. 2013) (discussing MCL 338.840 but finding that there is no federal common law private investigator privilege).

The Michigan statute was addressed more substantively in *Miller Oil Co. v. Smith Indus.*, No. 1:88 CV 785, 1990 WL 446502 (W.D. Mich. Dec. 13, 1990). In that case, plaintiffs alleged state law claims for negligent failure to warn and negligent design of gas dehydration units manufactured by the defendants. The defendants hired investigators *for purposes of the lawsuit* and the plaintiffs sought to depose these investigators. *Id.* at *1. The defendants objected that the information acquired by their investigators was privileged and not subject to discovery pursuant to the Michigan Private Detective Licensing Act, MCL 338.821 *et seq.* and the attorney work product doctrine. *Id.* at *1. The Court held that the information sought by the plaintiffs—the form and substance of questions that were asked as well as the subject matter of the communications between the investigators and witnesses—was not privileged under the statute because the requests only asked for the "facts involved and gathered" and thus did not seek "information or communications that are *confidential* in nature." *Id.* at *3 (emphasis in original) (finding *Ravary* very limited in scope). That court further stated, without elaboration, that "because this case is pending before a Federal District Court, the Court is not persuaded, at least not in this case, to strictly follow the Michigan statute [MCL 338.840]." *Id.* at *4. The Court did find, however, that the information sought was protected by the work product doctrine because "the questions asked by the investigators and the responses the witnesses elicited are

intertwined with the mental impressions, conclusions, opinions, or legal theories of Defendants' attorneys." *Id.* at *5-6.

However, the *Miller* decision—which is not binding on this Court in any case—pre-dates and conflicts with the Michigan Court of Appeals decision in *Death of White* that MCL 338.840 "would forbid the investigator from disclosing communications, *facts, evidence*, or other types of information that the investigator obtained during the course of his employment." 256 Mich. App. at 47 (emphasis added). It further conflicts with the plain language of the statute providing that "*[a]ny communications*, oral or written, furnished by a professional or client to a licensee, *or any information secured in connection with an assignment for a client*, is considered privileged…." MCL 338.840(2) (emphasis added). A federal court sitting in diversity must apply the same law as would be applied by the state courts, and generally, where a state appellate court has resolved an issue to which the high court has not spoken, "we will normally treat [those] decisions … as authoritative absent a strong showing that the state's highest court would decide the issue differently." *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997). Because there is no indication that the Michigan Supreme Court would interpret the scope of the investigator-client privilege any differently than the Michigan Court of Appeals did in *Death of White*, that decision should be treated as authoritative.

### 3. Jackson is protected by the investigator-client privilege

Kenneth Jackson has supplied evidence that he is a licensed private investigator in the State of Michigan. (DE 185 at 33-34.) Jackson has responded to the subpoenas at issue and identified documents in a privilege log reflecting "communications/emails to and/or from client regarding assignment from client" that have been withheld on the basis of the investigator-client and attorney-client privileges. (DE 306-2.)[1] As explained above, "the investigator-client privilege encompasses both the communications between the investigator and his client and any information obtained in connection with or in furtherance of the assignment by the client." *Death of White*, 256 Mich. App. at 48-49. While MCL 338.840 provides an exception to the non-disclosure of privileged information "as may be required by law," the Court does not interpret this exception to include disclosure in response to a subpoena. *See Death of White*, 256 Mich. App. at 52 (holding that the trial court committed reversible error in authorizing the disclosure of privileged information pursuant to an investigative subpoena); *see also William F. Shea, LLC*

---

[1] While Jackson also claims protection for the communications under the attorney-client privilege, he has failed to offer any evidence that he was works as an attorney's agent in the context of communicating legal advice. He has failed to identify any attorney for whom he worked or the nature of his duties, or otherwise explain why any of his communications would be protected by the attorney-client privilege as required by Rule 45(e)(2)(A). Accordingly, he has failed to meet his burden to establish protection of any communications under the attorney-client privilege, and that objection, to the extent made, is waived.

*v. Bonutti Research, Inc.,* No. 2:10-cv-615, 2014 WL 4494248, at *1 (S.D. Ohio Sept. 12, 2014) (explaining that "the obvious meaning of th[e] phrase ["otherwise required by law"] encompasses statutory or common law mandates that would necessitate disclosure," and not a court order). The one case cited by State Farm Mutual to the contrary, *Wilson v. Nextel Communications*, 296 F.Supp.3d 56, 59 (D.D.C. 2017) is readily distinguishable, because in that case, the Stored Communications Act expressly provided for disclosure of "information … in accordance with the terms of a … subpoena[.]" (citing 18 U.S.C. §§ 2703(3), 2707(a)).

State Farm Mutual *assumes* that the documents withheld *all* relate to improper solicitation of auto accident victims for Attorney Michael Morse, and thus should be excluded from any assertion of privilege because it asserts that the solicitation of clients is not related to "investigation business" as defined by the Act. However, the Court notes that Jackson's counsel has a duty to make a truthful, good-faith determination of what documents are privileged and to present a proper listing in the privilege log. *See* Fed. R. Civ. P. 26(g)(1) (certification requirements). *See also Laethem Equipment Co. v. Deere & Co.*, 261 F.R.D. 127, 137 (E.D. Mich. 2009) ("[T]he Court presumes the truthfulness of representations made to the Court by attorneys…. The plaintiff's [privilege] log is such a representation.") (internal citations omitted). The Court will presume, therefore, in

12

the absence of evidence demonstrating otherwise, that Jackson has now produced

responsive, non-privileged documents in response to the subpoenas, and that

Jackson's privilege log properly lists documents withheld on the basis of the

Michigan statutory investigator-client privilege – that is, "both the communications

between [Jackson] and his client and any information obtained in connection with

or in furtherance of the assignment by the client." *See Death of White*, 256 Mich.

App. at  48-49.

However, the Court agrees with State Farm Mutual that Jackson's August

17, 2018 privilege log, identifying only "page no.," "document/information

removed," and "privilege/basis for non-production" is insufficient to "enable the

parties to assess the claim" of privilege.  *See* Fed. R. Civ. P. 45(e)(2)(A).[2]

---

[2] "Typically, the following information is required for any privilege log:

1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
2. The date upon which the document was prepared;
3. The date of the document (if different from #2);
4. The identity of the person(s) who prepared the document;
5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, …;
6. The purpose of preparing the document…;
7. The number of pages of the document;
8. The party's basis "for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and
9. Any other pertinent information necessary to establish the elements of each asserted privilege."

Accordingly, the Court will order Jackson to submit an amended privilege log by

**April 1, 2019** that, in addition to the information already provided:

(1)     provides the date(s) or date range of *each* communication or email or specific category of communications;

(2)     provides the name(s) of the person(s) who authored/prepared the document(s) and the recipient(s), unless Jackson can establish, *under the facts of this case*, that disclosure of the name(s) "would be tantamount to disclosure of the substance of that confidential communication;"[3] and

(3)     indicates to which request(s) *each* document or specific category of documents is responsive.

---

*Dessault Systemes, Sa v. Childress*, No. 09-10534, 2013 WL 12181774, at *3 (E.D. Mich. Nov. 22, 2013) (citing *Cooey v. Strickland*, 269 F.R.D. 643 (S.D. Ohio 2010)).

[3] The court in *Ravary* recognized that "[g]enerally, the identity of the attorney's client is *not* considered privileged matter." *Ravary*, 163 Mich. App. at 454 (emphasis added, citation omitted). *Ravary* involved a lawsuit against Reed, the owner of a licensed private detective agency. Plaintiff alleged, in part, that Reed had embarked on a campaign to smear Plaintiff's reputation. The issue presented on appeal was whether Reed and the other defendants "may be compelled to divulge to plaintiff the name of the person or entity who hired them to investigate plaintiff." The trial court granted plaintiff's motion to compel answers and Reed and others were granted leave to appeal. The court of appeals ultimately held that the information sought was privileged and the trial court's decision was reversed. 163 Mich. App. at 449-50, 454-55. Specifically, that court found, with its holding expressly limited to the facts of that case, that the investigator-client privilege went as far as to protect the identity of the investigator's client because "disclosure of the client's name *under the facts of this case* would be tantamount to disclosure of the substance of that confidential communication [of the client's desire to obtain information about the plaintiff]." *Id.* at 455 & n.6 ("We emphasize that our holding is limited to the facts presented.") (emphasis added).

The amended privilege log must be specific enough to allow the parties (and potentially the Court) to determine whether the documents are subject to the asserted privilege.

### B.     The Crime-Fraud Exception

State Farm Mutual contends in its motion to compel that "[e]ven if withheld documents were covered by [a privilege], the crime-fraud exception should apply because there is a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, namely violations of law to fraudulently obtain and use crash reports to illegally solicit auto accident victims to treat at the defendant clinics and be represented by Morse to make no-fault and personal injury claims, and that the communications were made in furtherance thereof." (DE 156 at 29-30 & n.9 (citing laws and rules of professional conduct that prohibit solicitation of motor vehicle accident victims)).

"The crime-fraud exception to the attorney-client privilege is predicated on the recognition that where the attorney-client relationship advances the criminal enterprise or fraud, the reasons supporting the privilege fail." *People v. Paasche*, 207 Mich. App. 698, 705 (Mich. App. 1994). While the parties have not cited to a case (and the Court has not found one) applying the crime-fraud exception to a claim of privilege based on the investigator-client privilege, courts have applied that exception to privileges other than the attorney-client privilege, such as the

accountant-client privilege and the psychotherapist-patient privilege, reasoning that "the effect of the two privileges is the same: otherwise relevant information is withheld from the factfinder," and that therefore the purpose behind the privilege "must cease to operate when the advice sought by the client refers to ongoing or future wrongdoing." *See, e.g., Paasche*, 207 Mich. App. at 706 (accountant-client privilege); *In re Grand Jury Proceedings*, 183 F.3d 71, 74 (1st Cir. 1999) (psychotherapist-patient privilege). For those same reasons, the Court believes that the crime-fraud exception should similarly apply to documents withheld on the basis of the Michigan statutory investigator-client privilege.

"The party seeking to use the crime-fraud exception must first 'make a prima facie showing that a sufficiently serious crime or fraud occurred to defeat the privilege [and] second[] … must establish some relationship between the communication at issue and the prima facie violation.'" *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 391-92 (6th Cir. 2017) (quoting *In re Antritrust Grand Jury*, 805 F.2d 155, 164-66 (6th Cir. 1986) (emphasis omitted); *see also United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997)). However, one cannot defeat a claim of privilege "merely by making a charge of fraud. To defeat the privilege, a party must present prima facie evidence that the charge of fraud has some foundation in fact." *Stryker Corp. v. Ridgeway*, Nos. 1:13-CV-1066, 1:14-CV-889, 2015 WL 4425947, at *4 (W.D. Mich. July 20, 2015) (citing *Clark v.*

*United States*, 289 U.S. 1, 15 (1933)). "In other words, to invoke the crime-fraud exception, a party must make a sufficient showing that would give a prudent person a reasonable basis to suspect the perpetration of a crime or fraud." *Id.* (citing *In re Antitrust Grand Jury*, 805 F.2d at 166 (6th Cir. 1986)); *see also Stone Surgical*, 858 F.3d at 391-92 (noting that "[t]he law does not permit [defendant] to rely on the [privileged] emails themselves to prove fraud[,]" and that the district court thus properly rejected defendant's crime-fraud argument where defendant failed to offer evidence, aside from the privileged emails themselves, to establish a reasonable basis for believing that fraud occurred).

State Farm Mutual's motion to compel merely makes a passing attempt to generally assert that the crime fraud exception could apply to all documents withheld as privileged by Jackson. (DE 156 at 29-30.) It cites to allegations in a complaint submitted to the Attorney Grievance Commission regarding alleged unlawful solicitation by Michael Morse, but that complaint was subsequently dismissed by the Commissioner. (DE 156 at 16, citing DE 156-13.) It is hardly evidence. State Farm Mutual otherwise contends that Jackson worked for Michael Morse as a private investigator, and that he "*appears* to have functioned as a solicitor or runner." (DE 156 at 16.) In its supplemental brief, State Farm Mutual provides deposition testimony from several individuals who claim that they were illegally solicited by Jackson. (DE 306-9 through 309-12.) However, even if that

evidence was sufficient to "make a prima facie showing" generally "that a sufficiently serious crime or fraud occurred to defeat the privilege" (which the Court does not decide here), State Farm Mutual has failed to "establish some relationship between the communication[s] at issue and the prima facie violation.'" *See Stone Surgical*, 858 F.3d at 391-92. As counsel for State Farm Mutual stated at the August 3, 2018 hearing, it "need[s] a privilege log … first, so [it] can challenge those entries on a line by line basis *if* [it] believe[s] the crime fraud exception applies." (DE 286 at 161 (emphasis added).)

Lastly, while State Farm Mutual suggests that the Court undertake an *in camera* review of all documents withheld based on privilege, "the decision whether to engage in in camera review rests in the sound discretion of the district court." *United States v. Zolin*, 491 U.S. 554, 572 (1989); *see also Stryker Corp.*, 2015 WL 4425947, at *3 ("A Magistrate Judge is not required to undertake an in camera inspection of items purportedly subject to the attorney-client privilege simply because such review has been requested. 'In camera review is a discretionary measure based on a number of considerations besides a party's request, including judicial economy, bad faith and public interest.'") (citation omitted). The Court finds that such a time-consuming procedure at this stage of the litigation, and involving these documents, would constitute an unreasonably burdensome demand on the Court's resources, particularly in a case which

demands the Court's attention on a nearly weekly, and sometimes daily basis. "In camera inspection is not a device for shifting the work of the parties and counsel to the courts and should only occur when there is a genuine dispute concerning the applicability of a privilege that cannot be resolved without consideration of the content of the document." *Grossman v. Schwarz*, 125 F.R.D. 376, 390 (S.D.N.Y. 1989).

Therefore, after Jackson provides the amended privilege log as discussed above, to the extent State Farm Mutual believes the amended privilege log is inadequate to enable a determination of whether a privilege is attached, State Farm Mutual must first request further information from Jackson's counsel before bringing those documents and/or the privilege log back to the attention of the Court. State Farm Mutual may thereafter seek leave, if necessary, to challenge the claim of privilege as to those specific document(s) for which State Farm Mutual legitimately questions the privilege designation.

## IV.    Conclusion

Accordingly, for the reasons set forth above, and in the Court's August 8, 2018 Interim Order (DE 281), State Farm Mutual's motion to compel Jackson to produce documents responsive to subpoenas (DE 156) is **GRANTED IN PART AND DENIED IN PART**.

Jackson must produce an amended privilege log, as specified herein, on or before **April 1, 2019**. Thereafter, to the extent State Farm Mutual questions the privilege designation of any document(s) or believes the privilege log remains inadequate, it must first meet and confer with Jackson to request further information before it may seek leave, if necessary, to challenge, by a well-supported motion, the claim of privilege or the applicability of the crime-fraud exception as to specifically identified document(s).

**IT IS SO ORDERED.**

Dated: March 18, 2019

s/*Anthony P. Patti*
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on March 18, 2019, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti