UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

        Plaintiff,

v.

ELITE HEALTH CENTERS, INC.,
ELITE CHIROPRACTIC, P.C.,
ELITE REHABILITATION, INC.,
MIDWEST MEDICAL
ASSOCIATES, INC., PURE
REHABILITATION, INC., DEREK
L. BITTNER, D.C., P.C., MARK A.
RADOM, DEREK LAWRENCE
BITTNER, D.C., RYAN MATTHEW
LUKOWSKI, D.C., MICHAEL P.
DRAPLIN, D.C., NOEL H. UPFALL,
D.O., MARK J. JUSKA, M.D.,
SUPERIOR DIAGNOSTICS, INC.,
CHINTAN DESAI, M.D., MICHAEL
J. PALEY, M.D., DEARBORN
CENTER FOR PHYSICAL
THERAPY, L.L.C., MICHIGAN
CENTER FOR PHYSICAL
THERAPY, INC., and JAYSON
ROSETT

        Defendants.
_____/

Case No. 2:16-cv-13040
District Judge Avern Cohn
Magistrate Judge Anthony P. Patti

**OPINION AND ORDER GRANTING STATE FARM MUTUAL'S MOTION
FOR ORDER PERMITTING DISCLOSURE OF STATEMENTS MADE BY
MARK RADOM TO AMY ROSENBERG (DEs 345, 346 (SEALED))**

## I. Introduction

This matter is before the Court for consideration of Plaintiff State Farm Mutual Automobile Insurance Company's ("State Farm's") Motion for Order Permitting Disclosure of Statements Made by Mark Radom to Amy Rosenberg (DEs 345, 346 (Sealed)), Defendant Mark Radom's response in opposition (DEs 352, 353 (Sealed)), State Farm's reply brief (DEs 358 (Sealed), 359), and the joint statement of resolved and unresolved issues (DE 460). All discovery matters have been referred to me for hearing and determination (DE 229), and a hearing was held on this motion on May 10, 2019, at which the Court entertained oral argument and took this matter under advisement. (DE 472.)

## II. Background

### A. The Rosenberg Affidavit

On or about October 3, 2018, State Farm obtained an affidavit (hereinafter "the Affidavit") from a nonparty witness, Amy Rosenberg (formerly Amy Radom), the ex-wife of Defendant Mark Radom. (DE 346-1 (Sealed); DE 352-9 at 2.) Rosenberg and Radom were married on April 29, 1995 and divorced on January 22, 2016. (DE 352 at 17.) The Affidavit addresses the time period before, during and after Rosenberg's marriage to Radom, and includes statements purportedly made by Radom to Rosenberg during that time period. (See DE 346-1 (Sealed).) State Farm provided a copy of the Affidavit to Radom and advised his counsel that

it would not publicly disclose the Affidavit "absent either (1) confirmation from you on behalf of Radom that the foregoing statements are not privileged; or (2) a ruling from the Court." (DE 352-9 at 2-5.)

On October 5, 2018, Radom responded to State Farm's inquiry and objected to the disclosure of any statements in the Affidavit made by him to Rosenberg during their marriage as privileged, pursuant to the Michigan statutory marital communications privilege, MCL § 600.2162(4). (*Id.* at 2.) The opinion and order which follows will provide the "ruling from the Court" to which State Farm alluded.

### B. The Instant Motion

On October 22, 2018, with leave of the Court, State Farm filed the instant motion seeking an order permitting the disclosure of statements in the Affidavit made by Radom to Rosenberg. (DEs 345, 346 (Sealed).) State Farm argues that the Affidavit contains "[c]ritical statements [that] relate to the ownership of Horizon Imaging, LLC ("Horizon"), an MRI business that played a key role in the fraud scheme at issue," and "describes Radom's statements to Ms. Rosenberg about businesses and people connected to the fraud scheme." (DE 345 at 9.) State Farm contends that the statements in the Affidavit are not "confidential" statements barred by the Michigan marital communications privilege because: (1) they involve business matters involving or conveyable to third parties; (2) they discuss

the division of assets during divorce; (3) the privilege does not apply to communications in furtherance of frauds on third parties; and (4) the statements regard conduct that exposes Rosenberg to liability. (*Id.* at 20-26.) State Farm further argues that at least two statutory exceptions apply: (1) Radom deserted or abandoned the marriage and thus cannot invoke the privilege; and, (2) Rosenberg's statements in the Affidavit were not elicited through an *examination* in a court proceeding, as required by MCL § 600.2162(4), and thus are not covered by the privilege. (*Id*. at 26-28.)

Radom filed a response, arguing that the Affidavit improperly discloses confidential martial communications in violation of the Michigan marital communications privilege, MCL § 600.2162(4). (DE 352.) He asserts that: (1) his statements to Rosenberg during the marriage were "absolutely confidential;" (2) a "business/financial matter" exception does not apply; (3) the communications were not "regarding division of assets during divorce" or made "in furtherance of frauds on third parties;" (4) Rosenberg was not exposed to liability; and, (5) there are no applicable statutory exceptions to the privilege. (*Id.* at 17-27.) Radom also contends that: (6) the statements in the Affidavit are inadmissible because they are based on insufficient knowledge or speculation. (*Id.* at 12-17.)

State Farm filed a reply brief reasserting its position that the statements in the Affidavit are not barred by the marital communications privilege because

4

Rosenberg is not being "examined," as required by the statute, MCL § 600.2162(4), and, alternatively, that the statements are admissible because they are not "confidential," were made in furtherance of a crime or fraud, and exposed Rosenberg to liability. (DE 359.)

**III. Discussion**

    **A.    Federal Rule of Evidence 501 Provides that State Law Determines the Application of Privileges in This Case**

Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501; *see also Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1513 (6th Cir. 1990) ("In a civil case involving claims based on state law, the existence of a privilege is to be determined in accordance with state, not federal law."). Plaintiff's Complaint alleges only state law claims in this diversity case, and thus Michigan law supplies the rule of decision as to the claims and defenses and Michigan's law of privileges is applicable.

    **B.    Michigan's Marital Communications Privilege**

Michigan provides for a statutory marital communications privilege,[1] as follows, in relevant part:

---

[1] The Michigan statute also provides for a *spousal* privilege, which precludes one spouse from being "examined as a witness" for or against his or her spouse without their consent. MCL § 600.2162(1). This privilege applies only if the marriage exists at the time of trial, *People v. Fisher*, 442 Mich. 560, 568-69, 503 N.W.2d 50

5

> [A] married person or a person who has been married previously shall not *be examined in a civil action* or administrative proceeding as to any communication made between that person and his or her spouse or former spouse during the marriage.

MCL 600.2162(4) (emphasis added). "While the statute refers to 'any communication,' it is intended to embody the common law and therefore extends only to confidential communications." *People v. Rosa*, 268 Mich. 462, 485, 256 N.W.2d 483 (1934). Thus, to be privileged, "the communication must be made during the marriage, be intended to be confidential, and not be made in the presence of a third party." *People v. Fisher*, 442 Mich. 560, 588 n.10, 503 N.W.2d 50 (1993). "The nature and circumstances of the communication may be considered in determining whether a communication is confidential." *People v. Byrd*, 207 Mich. App. 599, 602, 525 N.W.2d 507 (1994). The person asserting the privilege has the burden of proof. *See Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 383 (6th Cir. 1997) (citing *People v. Whalen*, 129 Mich. App. 732, 736-37, 342 N.W.2d 917 (1984)).

The Michigan Supreme Court has recognized that "[t]he undisputed modern trend is toward a restrictive, rather than expansive interpretation of the [marital communications] privilege" and that "[t]he principle that privileges should be narrowly defined and the exceptions to them broadly construed is not new."

---

(1993), and thus in inapplicable here, as Rosenberg and Radom are no longer married.

*Fisher*, 442 Mich. at 573-74; *People v. Eberhardt,* 205 Mich. App. 587, 589–90, 518 N.W.2d 511 (1994). Accordingly, Michigan courts follow "the fundamental rule" that:

> Testimonial exclusionary rules and privileges contravene the fundamental principle that "the public … has a right to every man's evidence." As such, they must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."

*Fisher*, 442 Mich. at 574-75 (citation and internal quotation marks omitted). Radom "concede[s] it's a narrowly construed privilege." (DE 472 at 82.)

With those principles in mind, and focusing on the statutory language, the Michigan Supreme Court found that the phrase "be examined" in MCL § 600.2162 "connotes a narrow testimonial privilege only—a spouse's privilege against being *questioned as a sworn witness* about the described communications." *Id.* at 575 (emphasis added). The Court continued that "[t]he introduction of the marital communication *through other means* is not precluded." *Id.* (emphasis added).

### C. The Michigan Marital Communications Privilege Does Not Bar Statements Contained in Rosenberg's Affidavit

As the parties agreed at the hearing, the threshold issue here is whether the Michigan marital communications privilege applies to the statements in the Affidavit. (DE 472 at 82, 84, 95.) State Farm contends that the privilege does not apply because, in providing the Affidavit, Rosenberg is not being "examined" in

7

court proceedings, as required by the statute. (DE 345 at 27-28.)[2] Radom counters that the privilege does apply to the statements in the Affidavit because affidavits are "testimonial in nature" and "the functional equivalent of in-court testimony" and thus fit within the requirements of the statute. (DE 352 at 25-26.) While the scope of the marital communications privilege has been addressed by courts in other circumstances,[3] neither the parties nor the Court have found a case discussing

---

[2] State Farm acknowledged at the hearing, however, that if the Court determined that some or all of the statements that Radom made to Rosenberg were privileged, then State Farm could not examine Rosenberg as a witness at trial with regard to those statements. (DE 472 at 65.) Further, as correctly stated by Radom, *if* the privilege applies, it applies to all statements made during the marriage, including statements made while the parties are separated and in the process of getting a divorce, up to the date of the final divorce decree. *See People v. Vermeulen*, 432 Mich. 32, 37-38, 438 N.W.2d 36 (1989) ("the trial courts may not inquire into the viability of the marriage"); *People v. Hamacher*, 428 Mich. 884, 402 N.W.2d 484 (1987) (the statute "contains no exception to the privilege regarding communications between a husband and wife where the husband and wife are separated or are in the process of obtaining a divorce"). In a similar vein, State Farm's argument that Radom's mere statement that he was no longer interested in being married or no longer believed in marriage should constitute "desertion or abandonment" is not well-taken. (DE 345 at 27.) The Court will not make a determination of when the marriage ended independent of the state family court; but in any case, impertinent comments about the *desire* to end a marriage do not equate to "desertion or abandonment."

[3] *See, e.g., People v. Lutz*, No. 278619, 2008 WL 2812134, at *1 (Mich. App. July 22, 2008) (holding that "the marital communications privilege would not have precluded the prosecution from eliciting testimony from Detective Declerq relating what defendant's wife told him about a statement made by [her husband to her]"); *People v. Morgan*, No. 272143, 2007 WL 3015242, at *1 (Mich. App. Oct. 16, 2007) (wife's statements on 911 audiotape not precluded because the privilege "does not apply when the spouse is not a witness at trial"); *People v. Schultz*, No. 204846, 1998 WL 1988666, at * 1 (Mich. App. Dec. 11, 1998) (audiotape of

the applicability of the statute in the context of statements contained in a spouse's (or former spouse's) affidavit in a civil matter.

The primary issue therefore is one of statutory interpretation of the Michigan statute: whether Rosenberg's Affidavit constitutes "*be[ing] examined* in a civil action … as to any communication made between" her and her former spouse, Radom, such that the Michigan marital communications privilege applies to the statements in that Affidavit. *See* MCL 600.2162(4) (emphasis added). It is Radom's burden to establish that the privilege applies. *See Morganroth & Morganroth*, 123 F.3d at 383.

1. **Statutory interpretation**

Michigan law on statutory interpretation is essentially the same as it is under federal law. "Under Michigan law, statutory interpretation requires an examination of the plain language of the statute." *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014) (citing *In re Certified Question*, 468 Mich. 109, 659 N.W.2d 597 (2003)). A statute that is clear and unambiguous on its face needs no interpretation by a court. *Jones v. Grand Ledge Pub. Sch.*, 349 Mich. 1, 9, 84 N.W.2d 327 (1957); *In re Certified Question*, 468

---

recorded conversation between husband and wife not barred by the marital communications privilege); *Fisher*, 442 Mich. at 575-76 (wife's statements in detective's affidavit to obtain a search warrant were not privileged because "[a]lthough the detective testified concerning the statements made to him … at no time was Mary Fisher examined as a witness against her husband").

Mich. 109 ("A fundamental principle of statutory construction is that a clear and unambiguous statute leaves no room for judicial construction or interpretation."). "The Legislature is presumed to have intended the meaning it plainly expressed and, therefore, the clear statutory language must be enforced as written." *People v. Szabo*, 303 Mich. App. 737, 741, 846 N.W.2d 412 (2014) (citations omitted); *see also People v. McGraw,* 484 Mich. 120, 126, 771 N.W.2d 655 (2009) ("In interpreting a statute, we avoid a construction that would render part of the statute surplusage or nugatory."); *Mason v. City of Menominee,* 282 Mich. App. 525, 528, 766 N.W.2d 888 (2009) ("Courts must give effect to every word, phrase, and clause in a statute and avoid a construction that renders nugatory or surplusage any part of a statute.").

Likewise in federal court, "[w]hen the statutory 'language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" *Arlington Cent. Sch. Dist. v. Murphy*, 548 U.S. 291, 296-97 (2006) (multiple internal citations omitted). Although canons of construction "are no more than rules of thumb[,]" in interpreting a statute "a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. [multiple Supreme Court case citations omitted] When the words of a statute are

unambiguous, this first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). As explained below, the state statute in question is unambiguous, its language is plain, the disposition required by the text is not "absurd," and the Court is bound to narrowly enforce its clear terms.

### 2. An "affidavit" is not an "examination"

Regardless of whether an affidavit is "testimonial in nature," the more pertinent question is whether Rosenberg was *"examined"* with respect to the communications at issue in her Affidavit.

*Black's Law Dictionary* defines an "affidavit" as a "*voluntary declaration* of facts *written down* and sworn to by a declarant." BLACK'S LAW DICTIONARY, 68 (10th ed. 2014) (emphases added). On the other hand, an "examination" is defined as "[t]he *questioning* of a witness under oath." *Id.* at 680 (emphasis added). This definition is consistent with the Michigan Supreme Court's interpretation of the statute's language "be examined" as "connot[ing] a narrow testimonial privilege only – a spouse's privilege against being *questioned as a sworn witness <u>about</u> the described communications*." *Fisher*, 442 Mich. at 575 (emphasis added). In *Fisher*, the Michigan Supreme Court found the marital communications privilege inapplicable to statements contained in an affidavit to obtain a search warrant and subsequently written into the presentence report "because Mary Fisher [the

11

defendant's wife] was not called to testify either at trial or the evidentiary hearing….." *Id.* (noting that "at no time was Mary Fisher examined as a witness against her husband"). Similarly, in *People v. Morgan*, No. 272143, 2007 WL 3015242, at *1 (Mich. Ct. App. Oct. 16, 2007), the Michigan Court of Appeals stated that, "Michigan law is clear that *the marital communications privilege does not apply when the spouse is not a witness at trial*." (emphasis added) (finding that because defendant's wife "did not testify at trial, … the marital communications did not apply" and the privilege did not bar admission of a 911 audiotape of defendant's wife).

It is undisputed that Rosenberg has not been "examined" about Radom's statements in the Affidavit at this time. Even Radom admits that "Rosenberg was not 'examined' because State Farm canceled her deposition…." (DE 352 at 26.) Instead, she has only provided an affidavit – a "voluntary declaration of facts written down and sworn to by … [Rosenberg]." *See* BLACK'S LAW DICTIONARY, at 68. As the Michigan Supreme Court has explained, in the context of a different aspect of the marital communications privilege:

> Section 2162 … does not purport to bar a spouse from *disclosing* a confidential communication. Hamacher's wife, without violating § 2162, related the statement she attributed to her husband to social service workers, police officers, the prosecutor, and could have done so to newspaper and other reporters. She could indeed have gone on the nightly news and made a full statement of the confidential communication without violating § 2162, The "secret" would then no longer have been secret and "never again a wholly private matter."

12

> Nevertheless, there can be no doubt that despite the wide communication to the world at large of the "secret," Hamacher's wife could not, consistent with § 2162, "be examined" in court with regard to the communication.

*People v. Hamacher*, 432 Mich. 157, 177, 438 N.W.2d 43 (1989) (Levin, J. separate opinion) (emphasis added) ("The courts have no basis for declaring that the statutory purpose in 1861 was to protect the secrecy of the communication when the statute itself clearly does not purport to do so."). Likewise, Rosenberg was free to disclose the marital communications at issue here to State Farm, even if State Farm could not, in turn, examine her about them in court or deposition.

Consistent with this reasoning, Radom, through counsel, conceded at the hearing that the marital communications privilege is narrowly construed and that it does not prohibit Rosenberg from talking about or disclosing the statements made by Radom during their marriage, but only from being *examined* about them by a third party. (DE 472 at 82, 89.) He also acknowledges that an affidavit does not fit "squarely" within the "four corners" of the statute as an affidavit "may not be" an "examination." (*Id.* at 80, 84.) He instead argues that the privilege nevertheless applies to the statements in the affidavit, contending an affidavit is "testimonial in nature" and that it is a "reasonable interpretation of [the statute]" to find that it applies to statements in an affidavit because "there is some gray in that [statute's] language," and that to find otherwise is just "quibbling … with the exact language [of the statute]." (DE 352 at 25-26; DE 472 at 84-85, 90.) Elsewhere, he argues

that the Affidavit is "the *functional equivalent* of in-court testimony…." (DE 352 at 26 (emphasis added).)

However, the Court finds that the statutory language at issue is clear and unambiguous. And, as stated at the hearing and consistent with the law regarding statutory interpretation discussed above, the Court "do[esn't] have any choice but to quibble with the exact language [of the statute]" and to enforce "the plain language of the statute" as written. (*See* DE 472 at 90.) *See also DynaSteel Corp.*, 750 F.3d at 611. To read the statute as Radom urges would require that the Court go beyond the "plain language of the statute" and engage in "judicial construction or interpretation," which is not permissible here. *See In re Certified Question*, 468 Mich. 109 ("A fundamental principle of statutory construction is that a clear and unambiguous statute leaves no room for judicial construction or interpretation."). The privilege plainly only applies to "be[ing] *examined*" MCL § 600.2162(4) (emphasis added), which, as explained above, means being *questioned*, *i.e.*, being questioned on direct examination, cross examination, or redirect. The Michigan legislature could have included language in the statute that a married or previously married person "shall not give a statement" or "shall not give testimony" or "shall not disclose" or even "shall not give an affidavit" – instead of, or in addition to the prohibition against being "examined" – but did not. It is not the function of this Court to re-write or expand the plain language in the statute. Rather, as the *Fisher*

14

court recognized, "[o]f course, it is the prerogative of the Legislature, *if it chooses*, to expand the marital communications privilege beyond its testimonial nature. However, in the absence of such direction, we follow the mandate of strict construction, particularly where, as here, *ascertainment of the truth* transcends the need to exclude relevant evidence." *Id.* at 579 (emphases added).

### 3. An affidavit is not the "functional equivalent" of in-court testimony

The Court is also not persuaded by Radom's argument that an affidavit is the "functional equivalent" of in-court testimony. Leaving aside, for the sake of argument, the absence of any reference to "affidavits" in the statute at issue, affidavits are uncompelled, voluntary statements, given and used for a variety of purposes, both within and outside of litigation. When used within litigation, they are most often given in order to *avoid* appearing in court. And where they are submitted to a court, the affiant actually steers clear of being "examined," at least for the time being. Not so for instances in which a witness appears – whether in court or in a deposition – "to be examined" in a civil action. In those circumstances, the testimony may be compelled, or even if voluntarily undertaken, subjects the witness to potentially adverse and possibly hostile direct or cross-examination. While information conveyed in an affidavit is freely given, information relayed while being examined in court or deposition may involve a process of prying the information out of the witness, possibly with the Court's

assistance. Indeed, unlike the typical situation in court and deposition, an affidavit may be prepared, revised, sworn to and notarized without any lawyers being involved. Here, regardless of whether State Farm's counsel had anything to do with preparing this Affidavit, Rosenberg was free to put down on paper whatever information she wanted in the form of an affidavit, swear it out under oath before a notary, and present it to whomever she might choose. Nothing in the marital privilege statute prevented her from doing that, and nothing in this particular statute prevents the use of the Affidavit here.

In sum, because Rosenberg was not "examined" in her Affidavit about marital communications she had with Radom, the Michigan marital communications privilege, MCL § 600.2162(4), is not applicable to the Affidavit.[4]

### D. Radom's Remaining Arguments are Without Merit

#### 1. Rosenberg's Affidavit is distinguishable from Dr. Gunabalan's affidavit

Radom compares Rosenberg's Affidavit with the affidavit of Dr. Ramasami Gunabalan, which the Court has prohibited the parties from "attach[ing], referenc[ing] or otherwise rely[ing] on ... in their pending motions" (DE 349), and

---

[4] Even if, *arguendo*, portions of the Affidavit were precluded from disclosure by the marital communications privilege, Radom concedes, as he must, that many of the communications at issue here, especially in ¶¶ 45-53 of the Affidavit, did not occur until after the divorce was final. (DE 472 at 77- 79; DE 352 at 17.)

argues that Rosenberg's Affidavit should be treated similarly. (DE 352 at 11.) The Court disagrees.

Gunabalan purportedly signed an affidavit on June 23, 2017, and State Farm relied on the statements in that affidavit in a number of motions before this Court. However, when Gunabalan was questioned about his statements in that affidavit in a deposition on July 18, 2018, he broadly invoked the Fifth Amendment privilege against self-incrimination throughout the deposition and refused to answer any questions involving the substance, authentication of, or claims made in the affidavit. (DE 327-2, 327-5.) It was in this context that, following a hearing on the Elite Defendants' motion to strike Gunabalan's affidavit, the Court declined to strike the affidavit but instead entered an order that the parties "cannot attach, reference or otherwise rely on [Gunabalan's affidavit]... in their pending motions" based on his "unwillingness to testify[.]" (DEs 349, 354.)

As explained at the hearing on the instant motion, while Gunabalan essentially refused to testify about the statements in his affidavit, Rosenberg asserts in her Affidavit that she is "competent to testify to the facts stated in this Affidavit, which are based on [her] personal knowledge, information and belief" and she apparently stands ready to testify about the statements in her Affidavit, unless Radom objects to such testimony based on the marital communications privilege. (DE 472 at 76-77.) Thus, if she cannot testify at a deposition or at trial about the

statements in her Affidavit, it would be appear, at least at this time, to be because *Radom* would be blocking that testimony, not because she would be unwilling to testify, as Gunabalan was at his deposition. (*Id.* at 76-77, 83.) Accordingly, contrary to Radom's assertion, Rosenberg's Affidavit should not be treated by this Court like Gunabalan's.

> **2. Radom's remaining arguments regarding the Affidavit go to the weight or probative value of statements in the Affidavit, not to whether the statements are privileged**

Radom also generally complains that Rosenberg's Affidavit is "problematic" because, while the Affidavit includes language that Rosenberg is "competent to testify as to the facts stated in this Affidavit, which are based on [her] personal knowledge, information and belief," Radom argues that many of the statements are speculative, based on Rosenberg's "admitted lack of knowledge," or contain "knowledge qualifiers or [']I don't recalls['] or ['I]t's my understanding.[']" (DE 352 at 12-17; DE 346-1, ¶ 1 (Sealed); DE 472 at 76, 79-80.) Radom also speculates that the Affidavit was actually prepared by counsel for State Farm, not Rosenberg, which may well be true. (DE 352 at 15-16.)

However, as the Court explained, and as Radom's counsel conceded at the hearing, such arguments go to the weight or probative value of the statements in the Affidavit, not to whether the statements within the Affidavit are protected by the Michigan marital communications privilege. (DE 472 at 79-80.) Rosenberg

18

attests that the facts in the Affidavit are based on her "personal knowledge, information and belief," and then explains in the Affidavit which statements are based on belief or information, including which statements are based on her "understanding" or what Radom "told [her]." (DE 346-1.) The fact that Radom may have other evidentiary bases to object to certain statements in the Affidavit if used in support of a motion or if Rosenberg is ultimately examined as a witness in this matter (*e.g.,* hearsay, speculation, relevancy, etc.) does not mean that she is not *competent* to testify about such matters, or that such matters are *privileged*. In addition, whether Rosenberg drafted the Affidavit, or whether counsel for State Farm drafted the Affidavit for Rosenberg's approval and signature (as Radom surmises), is likewise immaterial to the marital communications privilege analysis. An affidavit is, by definition, a "voluntary declaration," which Rosenberg was under no obligation to sign at all, let alone under oath, irrespective of who drafted it. That is a far cry from being subject to subpoena and being forced to respond to an attorney's questions in open court.

## IV. Conclusion

In the final analysis, "the public" does indeed have "the right to every man's evidence," *Fisher*, 442 Mich. at 574-75, and this right favors a narrow, literal application of the statutory marital communications privilege, as written. For the reasons set forth above, the Michigan marital communications privilege, MCL §

19

600.2162(4), is not applicable to the Affidavit at issue here because Rosenberg was not "examined" about communications with Radom during her marriage in that Affidavit.  Therefore, State Farm's motion for an order permitting disclosure of statements made by Mark Radom to Amy Rosenberg in her Affidavit is **GRANTED**.

    **IT IS SO ORDERED.**


Dated: June 12, 2019                        s/*Anthony P. Patti*
                                                        Anthony P. Patti
                                                        UNITED STATES MAGISTRATE JUDGE