STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

        Plaintiff,

v.

ELITE HEALTH CENTERS, INC.,
ELITE CHIROPRACTIC, P.C.,
ELITE REHABILITATION, INC.,
MIDWEST MEDICAL
ASSOCIATES, INC., PURE
REHABILITATION, INC., DEREK
L. BITTNER, D.C., P.C., MARK A.
RADOM, DEREK LAWRENCE
BITTNER, D.C., RYAN MATTHEW
LUKOWSKI, D.C., MICHAEL P.
DRAPLIN, D.C., NOEL H. UPFALL,
D.O., MARK J. JUSKA, M.D.,
SUPERIOR DIAGNOSTICS, INC.,
CHINTAN DESAI, M.D., MICHAEL
J. PALEY, M.D., DEARBORN
CENTER FOR PHYSICAL
THERAPY, L.L.C., MICHIGAN
CENTER FOR PHYSICAL
THERAPY, INC., and JAYSON
ROSETT

        Defendants.

Case No. 2:16-cv-13040
District Judge Avern Cohn
Magistrate Judge Anthony P. Patti

_____/

**<u>OPINION AND ORDER DENYING ELITE DEFENDANTS' AND
CHINTAN DESAI'S LETTER REQUESTS FOR LEAVE TO FILE
MOTION TO DISQUALIFY STATE FARM'S COUNSEL AND EXCLUDE
UNETHICALLY OBTAINED EVIDENCE (DEs 488, 501)</u>**

## I. Introduction

This matter is before the Court for consideration of Defendants' Elite Health Centers, Inc., Elite Chiropractic, P.C., Elite Rehabilitation, Inc. ("The Elite Defendants"), and Chintan Desai, M.D.'s letter requests for leave to file a motion to disqualify State Farm Mutual Automobile Insurance Company's ("State Farm's") counsel and to exclude unethically obtained evidence, (DEs 488, 501), and Plaintiff State Farm's letter responses in opposition. (DEs 490, 492.)

## II. Background

### A. The Elite Defendants' and Desai's Requests for Leave to File a Motion

On May 24, 2019, the Elite Defendants requested leave to file a motion to disqualify Miller, Canfield, Paddock and Stone, PLC ("Miller Canfield") and Katten Muchin Rosenman LLP ("Katten") as counsel for State Farm and to exclude any evidence obtained by Miller Canfield from unethical or improper use or disclosure of secrets or client confidences of its client, Joshua Katke. (DE 488.) The Elite Defendants assert State Farm's counsel should be disqualified and evidence obtained as the result of Miller Canfield's attorney-client relationship with Katke should be excluded because: (1) the Michigan Rules of Professional Conduct Rule 1.6 prohibits an attorney from revealing confidences or secrets to the disadvantage of the client or the advantage of the attorney or a third party; and (2) the Sixth Circuit test for disqualification of counsel is satisfied. (*Id.*) On June 11,

2019, Defendant Chintan Desai, M.D. filed a letter joining the Elite Defendants' request, concurring in the reasoning set forth by the Elite Defendants. (DE 501.)

### B. Katten's and Miller Canfield's Responses

State Farm contends the Defendants' request for leave should be denied because: (1) Miller Canfield did not reveal confidential information to Katten or State Farm that arose out of Miller Canfield's relationship with Katke; (2) the Elite Defendants lack standing to move to disqualify Miller Canfield and Katten because they have never been clients of either firm; and (3) courts should hesitate to employ the drastic measure of attorney disqualification because such motions can be used as a harassment technique. (DE 490.) Miller Canfield maintains that it has not used or revealed to Katten or State Farm any confidential information relating to Miller Canfield's representation of Katke. (DE 492.)

## III. Discussion

The Elite Defendants and Desai lack standing to file a motion to disqualify Miller Canfield and Katten as counsel for State Farm and to exclude evidence obtained as a result of Miller Canfield's potential disclosure of client confidences because they do not have, and have never had, an attorney-client relationship with Miller Canfield or Katten.

### A. Motions to Disqualify are Highly Disfavored

Motions to disqualify counsel are highly disfavored and "disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Glenn v. Nasscond, Inc.*, No. 15-10270, 2016 WL 409409 at *2 (E.D. Mich. Feb. 3, 2016) (quoting *Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999)). Courts should review motions to disqualify counsel with "extreme caution because it can easily be misused as a harassment technique." *Howard v. Wilkes & McHugh, P.A.*, No. 06-2833-JPM, 2007 WL 4370585 at *6 (W.D. Tenn. Dec. 3, 2007); *see also Courser v. Allard*, No. 1:16-CV-1108, 2016 WL 10520134 at *1 (W.D. Mich. Nov. 28, 2016) (stating that these motions are "viewed with disfavor" and disqualification is an extreme sanction that could be used as a "potent weapon" or a "harassment technique").

Last month, State Farm sought leave to compel the deposition of Joshua Katke via letter request (DE 445), who, in turn, took the position that he has been a client of Miller Canfield, and that a conflict of interest between Miller Canfield's representation of both Katke and State Farm made the pursuit of his deposition objectionable. (DE 447.) Neither Desai nor the Elite Defendants filed a written response to State Farm's letter request, although, during a subsequent telephonic status conference held on May 16, 2019, the Elite Defendants did suggest that they

4

could somehow knock *both* of Plaintiff's law firms off of the case because of Miller Canfield's supposed representation of Katke. State Farm subsequently withdrew its letter request to compel Katke's deposition (DE 480), thereby rendering the request moot. These more recent requests by the Elite Defendants and Desai do give the impression of opportunism by parties (who are not represented by Miller Canfield) to exploit a potential conflict not pursued by Miller Canfield's ostensible client (Katke, a non-party) as a "potential weapon" or "harassment technique" to deprive State Farm of not just its local counsel (Miller Canfield) but of its lead counsel (Katten), rendering the continued prosecution of this case either exceedingly difficult or downright impossible at this juncture. These new requests read a lot like an attempt to "jump on board and see to what advantageous shore this skiff will take us," notwithstanding the fact that the owner of the vessel has seemingly abandoned ship. The Court proceeds with "extreme caution," lest the "drastic measure" requested here be "misused."

**B.   Standard for Disqualification of Counsel**

The Sixth Circuit recognizes a three-part test for attorney disqualification, "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." *Dana Corp. v.*

5

*Blue Cross & Blue Shield Mut. of Northern Ohio*, 900 F.2d 882, 889 (6th Cir. 1990). At issue here is the first prong – establishing the existence of an attorney-client relationship. The Court "must balance the interest of the court and the public in upholding the integrity of the legal profession against the right of a party to retain counsel of its choice." *MJK Family LLC v. Corp. Eagle Mgmt. Serv., Inc.*, 676 F.Supp.2d 584, 592 (E.D. Mich. 2009).

Although a minority of courts permit a non-party to raise opposing counsel's conflicts, *Courser*, 2016 WL 10520134 at *1, the Sixth Circuit has held "plaintiff's standing to assert opposing counsel's alleged conflict of interest is questionable at best . . . ." *Willis v. First Bank Nat'l Ass'n*, Nos. 89-3834, 89-3838, 1990 WL 155366 at *1 (6th Cir. Oct. 15, 1990). In *Frey v. Prior*, the court held the plaintiff lacked standing to assert a conflict of interest claim against the defendant's attorney and his firm because no attorney-client relationship ever existed between the plaintiff and the defendant's attorney. Nos. 91-3567, 91-3725, 1991 WL 253557 at *1 (6th Cir. Nov. 27, 1991).

The Elite Defendants and Desai do not claim that an attorney-client relationship exists or existed between the Defendants and Miller Canfield or Katten. The Defendants instead base their request on the relationship between non-party Katke and Miller Canfield. The parties do not dispute that Katke has had an express attorney-client relationship with Miller Canfield. However, the

6

Sixth Circuit test requires that "a past attorney-client relationship existed between *the party seeking disqualification and the attorney it seeks to disqualify*," *Dana Corp.*, 900 F.2d at 889 (emphasis added), and, unlike Katke, there is no claimed attorney-client relationship between the Elite Defendants or Desai and the law firms they seek to disqualify. Similarly, the lack of attorney-client relationships between the Elite Defendants and Desai with those same firms creates an issue with respect to excluding evidence on the basis of allegedly unethical conduct on the part of Miller Canfield.

    C.    **Excluding Evidence**

"[A] district court is obliged to consider unethical conduct by an attorney in connection with any proceedings before it." *DeBiasi v. Charter County of Wayne*, 284 F.Supp.2d 760, 770 (E.D. Mich. 2003). This Court has adopted the Michigan Rules of Professional Conduct as the applicable federal rules of professional conduct. *See* U.S. District Court for the Eastern District of Michigan, Local Rule 83.22(b). According to Rule 1.6(b), "[a] lawyer shall not knowingly . . . (1) reveal a confidence or secret of a client; (2) use a confidence or secret of a client to the disadvantage of the client; or (3) use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure." MICH. R. PROF. COND. 1.6. The Sixth Circuit has utilized Rule 1.9 to assist in the interpretation of information that is protected under Rule 1.6.

7

*CenTra, Inc. v. Estrin*, 538 F.3d 402, 422 (6th Cir. 2008) (referencing Michigan Rule 1.9, which governs the information that may be disclosed from work with former clients, to interpret the material Rule 1.6 covers).

Although Rules 1.6 and 1.9 bar the disclosure of information obtained by a lawyer representing a client, "documents or information that are public or published are not considered confidential under Michigan's Rules of Professional Conduct." *Id*. at 423. Ultimately, the "primary concern is whether and to what extent the attorney acquired confidential information." *Hutto v. Charter Twp. of Clinton*, No. 12-CV-12880, 2014 WL 1405216 at *4 (E.D. Mich. Apr. 11, 2014) (quoting *Factory Mut. Ins. Co. v. APComPower, Inc.*, 662 F.Supp.2d 896, 899 (W.D. Mich. 2009)).

Here, the Elite Defendants and Desai point to alleged improper disclosure of client confidences of client Katke by Miller Canfield as the basis for excluding related evidence. Kathy Josephson, a partner at Katten and counsel for State Farm, stated in a declaration filed with the Court, "Neither I nor any other Katten attorney representing SFMAIC in this case have any information about or arising out of Miller Canfield's representation of Mr. Katke, beyond that it pertains to corporate formation work over the past four to five years, let alone confidential information obtained by Miller Canfield in the course of its representation of Mr. Katke." (DE 490-1 at 7.) Additionally, Josephson asserts, "No one at Miller Canfield has

8

provided or disclosed to SFMAIC or Katten any documents referencing or relating to Mr. Katke, or any entity he has formed." (*Id*.)

Thomas Cranmer, a partner at Miller Canfield and local counsel for State Farm in Detroit, supports Josephson's statements and asserts in a separate declaration filed with the Court, "No one [sic] at Miller Canfield has provided or disclosed to SFMAIC or Katten any information about Mr. Katke or Miller Canfield's representation of him," (DE 492 at 5), with the exception of notifying Katten that "Mr. Katke was a current client of the firm and that Miller Canfield had represented him on a handful of matters involving corporate formation work over the past four to five years." (DE 492 at 4.) However, Cranmer asserts, "We did not describe the nature of that work, identify the corporations involved, or provide any other information related to the firm's representation of Mr. Katke." (*Id*.)

For their part, the Defendants speculate that "it is all but certain that Miller Canfield learned information about Defendants by virtue of its attorney-client relationship with Katke, and according to Katke, then disclosed that information to Katten, which it is using it [sic] to prosecute its case against Defendants." (DE 488.) This statement is otherwise unsupported, with no attached declaration from Katke, and no request to file one in rebuttal to Plaintiff's two declarations. Moreover, as the parties well know from the extensive record in this heavily litigated case, State Farm has likely had multiple sources, including some publicly

9

available ones, from which it was able to piece together the history of Katke's corporate dealings, without access to Miller Canfield's files. The accusation being leveled against Miller Canfield is a serious one, and very loose inferences will not suffice to convince the Court that the law firm's ethical integrity has been breached. Nor will the Court condone turning this issue into an unnecessary sideshow.

Nevertheless, the Court recognizes that the matter is before it on a mere request for leave, not on a fully briefed motion; however, even assuming there is evidence that a breach of client confidence has occurred between Miller Canfield and Katke, Katke is not seeking to bring that claim to this Court. Thus, even if a breach of confidence between Miller Canfield and Katke can be established, the Elite Defendants and Desai lack standing to assert that claim. *See United States v. Baisen-Koning*, No. 4:09-cr-3031, 2010 WL 3584383 at *1 (D. Neb. Sept. 7, 2010) (Plaintiff's motion to exclude evidence was denied because an attorney-client relationship could not be established, and thus the plaintiff lacked standing); *see also* Mallen & Smith, *Legal Malpractice* § 17:41 (2019 ed.) (Generally, to establish standing, a confidential or fiduciary relationship must exist between the attorney and complaining party). This is so because, "[i]n general, the attorney-client privilege is personal and cannot be asserted by anyone other than the client."

*U.S. v. Hatcher,* 323 F.3d 666, 674 n. 2 (8th Cir.2003) (citing *United States v. Fortna,* 796 F.2d 724, 732 (5th Cir.1986)).

### D. Defendants do not have Standing to Disqualify Counsel or Exclude Evidence

Generally, "courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 86-88 (5th Cir. 1976) (cited by *Frey*, 1991 WL 253557 at *1). However, if the former client does not move to disqualify or move to exclude evidence obtained improperly, another party may not assert the rights of the client to establish standing. "Ordinarily . . . a litigant 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *U.S. Dept. of Labor v. Triplett*, 494 U.S. 715, 720 (1990) (quoting *Warth v. Seldin, Inc.*, 422 U.S. 490, 499 (1975)).

In the present case, the Elite Defendants and Desai may not establish standing through the potential injury of a non-party—in this case, Katke. Further, the Elite Defendants and Desai may not move to disqualify State Farm's counsel or exclude evidence on the basis of a potential conflict of interest or improper disclosure based on Katke's attorney-client relationship with Miller Canfield. Thus, because no attorney-client relationship exists between the Elite Defendants and Desai on the one hand, and the counsel they seek to disqualify on the other, the Elite Defendants and Desai lack standing to file a motion to disqualify counsel on

11

the basis of conflict of interest or to exclude evidence on the basis of a breach of confidentiality.

## IV. Conclusion

Accordingly, for the reasons set forth above, the Elite Defendants and Desai lack standing to file their proposed motion(s). Therefore, their letter requests for leave to file motion to disqualify State Farm's counsel and exclude evidence obtained by Miller Canfield (DEs 488, 501) are **DENIED**.

**IT IS SO ORDERED.**

Dated: June 24, 2019          s/*Anthony P. Patti*
                              Anthony P. Patti
                              UNITED STATES MAGISTRATE JUDGE